IN THE CASE OF


UNITED STATES, Appellee

v.

Michael L. BAKER, Staff Sergeant
U.S. Army, Appellant

No. 02-0334

Crim. App. No. 9800743

United States Court of Appeals for the Armed Forces

Argued April 1, 2003

Decided July 1, 2003


    EFFRON, J., delivered the opinion of the Court, in which
GIERKE, BAKER, and ERDMANN, JJ., joined.  CRAWFORD, C.J., filed
a separate dissenting opinion.


<u>Counsel</u>

For Appellant:  <u>Captain Craig A. Harbaugh</u> (argued); <u>Colonel
Robert E. Teetsel</u>, <u>Lieutenant Colonel E. Allen Chandler,
Jr.</u>, <u>Major Imogene M. Jamison</u> (on brief); <u>Colonel Adele H.
Odegard</u>, <u>Captain Brian S. Heslin</u> and <u>Captain Sean S. Park</u>.

For Appellee:  <u>Captain Christopher Graveline</u> (argued); <u>Colonel
Lauren B. Leeker</u>, <u>Lieutenant Colonel Margaret B. Baines</u> and
<u>Major Jennifer H. McGee</u> (on brief).



Military Judge:  Donna M. Wright



<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**</u>

Judge EFFRON delivered the opinion of the Court.

The charges against Appellant included 12 separate specifications: one each of attempted larceny, dereliction of duty, and larceny under Articles 80, 92, and 121, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880, 882, and 921 (2000); four involving failure to go to or absenting himself from his appointed place of duty under Article 86, UCMJ, 10 U.S.C. § 886 (2000); three specifications of willful disobedience of a commissioned officer under Article 90, UCMJ, 10 U.S.C. § 890 (2000); and two of willful disobedience of a non-commissioned officer under Article 91, UCMJ, 10 U.S.C. § 891 (2000). Appellant contested each of the charges before a special court-martial composed of officer members. The military judge dismissed one of the specifications and the court-martial panel returned findings of not guilty on seven of the remaining eleven specifications. The panel convicted Appellant of one specification of attempted larceny, one specification of absence from his appointed place of duty, and two specifications of willful disobedience of a superior commissioned officer.

The panel sentenced Appellant to a bad-conduct discharge and reduction to the grade of Private E-1. The convening authority approved the sentence and the Court of Criminal Appeals affirmed in an unpublished opinion.

United States v. Baker, No. 02-0334/AR

On Appellant's petition, we granted review and specified the following issues:[*]

> I. WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TWO DEFENSE COUNSEL ATTEMPTED TO WITHDREAW FROM THE CASE FOR ETHICAL REASONS, WERE UNABLE TO WITHDRAW, AND THEN PROVIDED NO ASSISTANCE DURING HIS TESTIMONY?
>
> II. WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DETERMINE WHETHER THERE WAS A FACTUAL BASIS FOR DEFENSE COUNSEL'S BELIEF APPELLANT WOULD TESTIFY FALSELY BEFORE DEPRIVING APPELLANT OF HIS RIGHT TO COUNSEL DURING HIS TESTIFYING ON THE MERITS?
>
> III. WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL DEFENSE COUNSEL REMAINED HIS COUNSEL DURING POST-TRIAL PROCEEDINGS AFTER APPELLANT IN HIS CLEMENCY PETITION ASSERTED THAT HIS COUNSEL HAD ABANDONED HIM DURING THE TRIAL?

For the reasons set forth below, we remand for a fact-finding hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

## I. BACKGROUND

At the close of the prosecution's case, defense counsel made a series of motions for findings of not guilty on nine of the twelve specifications. The military judge dismissed one specification involving willful disobedience of a non-

---

[*] Argument was heard in this case at the Suffolk University School of Law, Boston, Mass., as part of this Court's Project Outreach. See United States v. Mahoney, __ M.J. __, __ n.1.(C.A.A.F. 2003).

commissioned officer, and permitted the trial to proceed with respect to the remainder of the charged offenses. See Rule for Courts-Martial 917 [hereinafter R.C.M.].

The defense began its case-in-chief with courtroom testimony by two witnesses. Following their testimony, the defense presented stipulated testimony from four other witnesses, as well as eight exhibits.

Following these presentations, the defense requested "a short recess" and the military judge announced that the court would be "in recess for five minutes." Forty minutes later, the proceedings resumed for a session without the presence of the members under Article 39(a), UCMJ, 10 U.S.C. § 839(a). After an additional two-minute recess, the military judge, trial counsel, and defense counsel addressed the potential use of a prior civilian conviction:

> Military Judge: The court's called to order.
> All parties present when the court recessed are again present except the members.
> I have before me what's Prosecution Exhibit 18 for identification which is a copy of a civilian conviction, and this is from 1986; is that correct, government?
>
> Trial Counsel: Yes, ma'am.
>
> Military Judge: And you agree, as it's over 10 years old, that unless -- that under 609 it would not be admissible unless the requirements of 609(b) were met; is that correct?

> Trial Counsel:  Yes, Ma'am, that's correct.
>
> Military Judge:  Okay.  Which is basically that a conviction over 10 years old is not admissible unless the court determines, in the interest of justice, that the probative value of the conviction substantially outweigh[s] its prejudicial effect.
> If and when the accused testifies, then at that time you would have to offer it and argue that that rule has been met; right?
>
> Trial Counsel:  Yes, ma'am.
>
> Military Judge:  I just want to make that clear, that even if the accused testifies, it may or may not come in, and whether it comes in or not depends in large part on what the accused says.
> Defense, do you understand?
>
> Defense Counsel:  Yes, ma'am.

Immediately following the defense counsel's response, the military judge raised a new topic, advising Appellant that his lawyers wanted to be relieved of their responsibility to represent him:

> Military Judge:  All right.  Now, Sergeant Baker, your attorneys have basically come to me and said that based on what they think your testimony is going to be, they want off your case.  Okay?
>
> Accused:  Yes, ma'am.

The military judge did not indicate when she had engaged in a discussion with defense counsel regarding their desire to be "off" the case.  The defense brief states that Appellant was not present for the discussion between defense counsel and the

5

military judge, and the Government has not challenged that statement.

After advising Appellant that his counsel no longer wished to represent him, the military judge engaged in a further interchange with Appellant and his counsel regarding the military judge's assumptions about counsel's request to withdraw from representation:

> Military Judge: Now, they haven't told me anything more than that, but what I read into that -- and this is what I'm reading into it -- is that they expect or they're thinking that you are going to testify inconsistently with what you have said before. Okay?
>
> Accused: Yes, ma'am.
>
> Military Judge: Just based on the fact that they want off the case, that's the reason I think it is.
> What I'm telling you is this, that --
> Captain [B], am I right? Is the court right that you do not even feel that you can ethically put your client on the stand and not even ask him any questions, and just --?
>
> Cpt [B]: That's correct, ma'am.
>
> Military Judge: Captain [M], is the same true for you?
>
> Cpt [M]: Yes, ma'am.

After defense counsel responded, the military judge told Appellant how the court-martial would proceed if he desired to testify:

What I am telling you, Sergeant Baker, is if you persist in this wish to testify, I can't tell you that you can't testify. But your attorneys don't have to basically go along with offering your testimony and they're not going to cooperate in offering what they believe might be perjured testimony to the panel.

So if you want to do this, if you want to testify without the assistance of counsel, you can do that. But what that means is when the members come back, I'm going to say -- I'm going to say the defense calls Sergeant Baker to the stand. The trial counsel is going to swear you in. And then you're going to testify all by yourself.

Now one of the dangers there is, when you do that, you don't have the assistance of a lawyer who has been trained to keep you away from certain areas of testimony that might not be helpful to yourself. One of those areas is that threat of this prior conviction, which at this point is not admissible on the merits of the case; but, depending on what you say, it may come in on cross examination, because you are going to be cross examined. So that means the government's side, with the two lawyers they have there, are going to be able to go at you and, basically, your defense counsel aren't going to do anything to help you.

Do you understand that?

Accused: Yes, ma'am.

Military Judge: Do you understand the risk you run when you get on the stand and you don't have the help of a lawyer helping you through your testimony?

Accused: Yes.

7

Appellant asked the military judge if, during his testimony, he could refer to notes that he had prepared prior to trial.  The military judge advised him that he could do so, that the notes would be marked as an exhibit, that the government would have the opportunity to review the notes, and that he could be cross-examined on the notes.  The military judge returned to the subject of testifying without the benefit of counsel:

> Military Judge:  And the other thing I want to say -- I want to say a couple of other things -- like I said, when you do this, you know, we have lawyers represent people for a purpose, and they know what things to avoid and what things to emphasize.  And when you take the stand like this, you're not going to have the assistance of counsel, and you're going to be cross-examined, and if the members have questions they're going to be able to ask you, and you're not going to have a lawyer there to talk to about whether or not you should answer, or how you should answer it.
>
> The other thing is --
>
> Accused:  Does -- does -- is the same procedure going to be followed?  I mean, will they go through you?
>
> Military Judge:  The panel questions?  Yes. And I will decide whether or not they're asked.
>
> But your counsel aren't going to get a chance to say objection because they're not going to participate in any way with your testifying.

Recognizing the potential for appellate litigation of this matter, the military judge directed defense counsel to prepare a memorandum for the record:

> Military Judge:  The other thing is I will instruct them to prepare for their records a memorandum for record basically outlining the situation as it exists now, and then after you testify the situation that existed after that.  Now that document is going to remain in their files, but that's to protect them in case you say anything later down the road about what your defense counsel would do or not do, or whether you didn't have effective assistance of counsel.
>
> And, at a later date, if their representation of you is brought into question or challenge, then they're going to have those documents in their file and they're going to be able to present them to the appropriate authorities to defend themselves against ineffective assistance of counsel claims.
>
> Do you understand that?
>
> Accused:  Yes, ma'am.
>
> Military Judge:  And you understand the risk you run if you testify without the benefit of counsel?
>
> Accused:  Yes.

The military judge also told Appellant that his lawyers would not be able to discuss his testimony during defense counsel's argument to the members:

> Military Judge:  The other thing is that counsel will not argue what you said, because they don't feel that they can ethically do that, and the court is not

9

going to require them to do that. Now they've asked off the case. I'm not going to allow them to get off the case. I'm not going to release them. Okay? The court has the power to do that, and at this late juncture, I'm not going to let you frustrate the process and I'm not going to make you go through the rest of this trial without the benefit of counsel. So I'm not going to permit them off the case.

But when they go to do their closing argument, they're not going to refer to things you said. They're going to attack in other ways, they're going to attack the government's case I'm sure, but they're going to do it with the evidence that's been presented so far.

Do you understand that?

Accused: Yes, ma'am.

The military judge asked Appellant if he would like to discuss the matter further with his counsel. When he said that he would like to do so and refer to the notes prepared prior to trial, the military judge provided him with further advice regarding prosecution access to the materials. After a fifteen-minute recess, the military judge confirmed that Appellant wanted to testify, marked Appellant's notes as an exhibit, and recalled the members to the courtroom. At that point, the military judge announced:

Let the record reflect that the members have reentered the courtroom.

Members, the defense calls Staff Sergeant Baker, the accused, to the stand.

10

Without the assistance of counsel while he was on the witness stand, Appellant testified at length in narrative form, responded to the prosecution's detailed cross-examination, and answered a series of questions posed by the military judge. At the conclusion of his testimony, the defense rested its case, and the prosecution offered brief testimony in rebuttal.

As anticipated by the military judge, appellate review has focused on the actions of both defense counsel. Contrary to the expectation of the military judge, counsel did not take the steps necessary to ensure that explanatory memoranda were available for review during this appeal. During the present appeal, we noted that the military judge directed each defense counsel to prepare and retain explanatory memoranda, and we ordered counsel to file the pertinent documents under seal. United States v. Baker, 58 M.J. 242, 243 (C.A.A.F. 2003). Both defense counsel, however, have informed the Court in separate affidavits that they were unable to comply with the order because they do not possess the requested documents. The affidavits filed by trial defense counsel do not indicate that such documents are otherwise available, and no such representation has been made by appellate counsel for either party.

United States v. Baker, No. 02-0334/AR

II. DISCUSSION

This appeal concerns the Sixth Amendment right to the effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668 (1984). Appellant contends that the actions of his defense counsel at trial, who sought to withdraw from the case and who did not provide assistance during Appellant's testimony, deprived him of the effective assistance of counsel. As outlined in the previous section, the record indicates that the actions by defense counsel at trial may have been prompted by concern about the veracity of Appellant's proposed testimony.

1. Competing interests

When circumstances indicate that an accused may commit perjury at trial, counsel for the accused is placed at the intersection of competing and sometimes conflicting interests. See generally John Wesley Hall, Jr., Professional Responsibility of the Criminal Lawyer 809-15 (2d ed. 1996); Terence F. MacCarthy & Carol A. Brook, Anticipated Client Perjury: Truth or Dare Comes to Court, in Ethical Problems Facing the Criminal Defense Lawyer (Rodney J. Uphoff ed., 1995). In addition to the constitutional right to the effective assistance of counsel, these interests include:

United States v. Baker, No. 02-0334/AR

(1) The constitutional right of an accused to testify in his or her own defense.  Rock v. Arkansas, 483 U.S. 44, 51 (1987); Nix v. Whiteside, 475 U.S. 157 (1986); Harris v. New York, 401 U.S. 222, 225 (1971).

(2) The ethical obligation of defense counsel to provide legal representation that is both competent and diligent.  See, e.g., Dep't of the Army, Regulation 27-26, Rules of Professional Conduct for Lawyers Rules 1.1, 1.3 (May 1, 1992) [hereinafter AR 27-26]; American Bar Association Model Rules of Prof'l Responsibility Rules 1.1, 1.3 (1983) [hereinafter ABA Model Rule].

(3) The general prohibition against disclosure of communications between a client and an attorney, subject to limited exceptions.  Military Rule of Evidence 502 [hereinafter M.R.E.]; AR 27-26, Rule 1.6; ABA Model Rule 1.6.

(4) The criminal prohibitions concerning false testimony on a material matter.  See, e.g., Articles 98, 131, 134, UCMJ, 10 U.S.C. §§ 898, 931, 934 (2000) (noncompliance with procedural rules, perjury, and subornation of perjury, respectively).  See Nix 475 U.S. at 173.

(5) The ethical duty of an attorney to not offer or assist in offering material evidence that an attorney knows to be false.  See AR 27-26, Rule 3.3(a) (duty of candor toward the

13

court); Rule 3.4 (obligation of fairness to opposing party and counsel); ABA Model Rules 3.3(a), 3.4.

(6) The ethical duty of an attorney who knows that a client is contemplating a criminal act to counsel the client against doing so. See AR 27-26, Rule 2.1, 3.3, cmt.; ABA Model Rule 2.1.

(7) The related ethical duty of an attorney to withdraw if a client persists in a fraudulent or criminal course of conduct. See AR 27-26, Rule 1.16, 3.3, cmt.; ABA Model Rule 1.16.

(8) The rules governing impeachment and rebuttal. See, e.g., M.R.E. 608, 609, 613; Nix, 475 U.S. at 173; United States v. Havens, 446 U.S. 620 (1980); Harris, 401 U.S. at 225-26.

2. Procedural considerations

The initial actions taken by a competent defense counsel in preparing diligently for trial are relatively non-controversial. At the outset, the attorney will discuss with the client the relative benefits of testifying versus relying on the privilege to remain silent. In the course of such a discussion, the attorney will ascertain from the client the nature of any proposed testimony. The attorney will then conduct a reasonable investigation to identify potential areas of vulnerability to cross-examination or rebuttal. See American Bar Ass'n,

United States v. Baker, No. 02-0334/AR

Standards for Criminal Justice, The Defense Function Std. 4-4.1 (2001).

In the course of such trial preparation, the attorney may identify conflicts between the proposed testimony and other evidence, including prior statements to the attorney by the client. Such conflicts do not necessarily mean that the proposed testimony is false. See Hall, supra, at 828-29 n.5. It may well be that the client was reluctant to be candid with the attorney until a degree of comfort was established in the relationship. Under the ethical obligations of competence, diligence, fairness, and candor, the attorney cannot close his or her eyes to the possibility that the proposed testimony is false. See Brian Slipakoff & Roshini Thayaparan, Current Development 2001: The Criminal Defense Attorney Facing Prospective Client Perjury, 15 Geo. J. Legal Ethics 935, 942-43 (2000). The attorney must conduct an appropriate investigation to ascertain whether the proposed testimony is false. See Hall, supra, at 827-28 n.4. Even if the client asserts that he or she wants to present false testimony to the court, a diligent attorney will recognize that such a statement may reflect the pressures of a looming trial, and will not accept it at face value without making a reasonable inquiry.

When an attorney perceives that a client's prospective testimony may be false, the attorney will face conflicting

15

pressures in terms of the client's constitutional right to the effective assistance of counsel, ethical duties toward the client, ethical duties toward the court, and applicable statutory and regulatory procedures.  Despite substantial attention to this problem by scholars, practitioners, and judges, there is considerable disagreement as to the steps that should be taken by counsel and judges to reconcile these competing interests.  The Supreme Court, in its leading decision on these issues, declined to provide detailed guidance with respect to "the weight to be given to recognized canons of ethics, the standards established . . . in statutes or professional codes, and the Sixth Amendment."  Nix 475 U.S. at 165.  See generally Slipakoff & Thayaparan, at 935 (summarizing recent ethical standards, model rules, disciplinary rulings, statutes, and judicial decisions).  Although we have touched upon these matters in earlier cases, we have not issued definitive holdings regarding the propriety of any particular approach.  See United States v. Winchester, 12 C.M.A. 74, 30 C.M.R. 74 (1961); United States v. Radford, 14 M.J. 322 (C.M.A. 1982).

There are two matters of particular importance to the present appeal.  The first area of concern is the standard an attorney should apply in determining whether the proposed testimony is false for purposes of triggering any ethical

obligations.  See Hall, supra, at 827-29; Slipakoff &

Thayaparan, supra, at 942-47.  Compare United States ex rel.

Wilcox v. Johnson, 555 F.2d 115, 122 (3d Cir. 1977) (an attorney

must possess "a firm factual basis" that the client will commit

perjury before bringing the matter to the attention of the

court), with Shockley v. State, 565 A.2d 1373 (Del. 1989) (the

attorney must be convinced that the statement is false beyond a

reasonable doubt).  Because the "firm factual basis" standard is

sufficient to ensure that counsel has conducted an adequate

inquiry prior to initiating any action under the ethical

standards, we shall not require a higher standard than that

applied by the Third Circuit.

The second area of concern is the question of what actions,

if any, an attorney must take if the client persists in a desire

to provide what the attorney has determined to be false

testimony.  See Hall, supra, at 830-35; Slipakoff & Thayaparan,

supra, at 947-54.  One view is that the attorney should not have

any involvement with a client who intends to taint the

proceeding through the presentation of false testimony.  Under

this view, if the client persists in the desire to testify

falsely, the attorney should ask the court for permission to

withdraw from the representation.  See AR 27-26, Rule 3.3 cmt.

A second view is that withdrawal is too disruptive and

simply foists the issue on the next attorney.  Therefore, the

17

relationship should not be severed completely, but the client should not have the assistance of counsel during the presentation of testimony.  Under this approach, the attorney provides non-specific notice to the court that the client will testify in free narrative form without the benefit of questions from defense counsel, and counsel does not refer to the testimony during closing argument.  See, e.g., Restatement (Third) of The Law Governing Lawyers § 120 cmt i (2000); cf. AR 27-26, Rule 3.3 cmt. (if withdrawal is not permitted, counsel should not "lend aid to the perjury or use the perjured testimony"); Lowrey v. Cardwell, 575 F.2d 727 (9th Cir. 1978). The free narrative approach has been accepted by some courts and rejected by others.  See Nix, 475 U.S. at 170 n.6; United States v. Long, 857 F.2d 436, 446 n.7 (8th Cir. 1988); Hall, supra, at 835.

A third view is that the free narrative approach violates attorney-client confidentiality because the unusual format of the testimony signals to the judge or jury that the client is not telling the truth.  This third view focuses on the confidentiality of the attorney-client relationship, the client's right to assistance of counsel, and the client's right to testify.  Under this approach, if the client persists in the desire to testify, the attorney should provide unqualified assistance, treat the matter in the same fashion as any other

18

evidence, and give no indication of concerns about perjury to the court or opposing counsel.  See Hall, supra, at 832 (citing Monroe H. Freedman, Perjury: The Criminal Defense Lawyer's Trilemma, in Lawyers' Ethics in an Adversary System Ch.3 (1975)).

The first and third options – withdrawal of counsel and disregard of the perjury -- each attempt to address the issue by giving primacy to one set of interests.  The second approach – testimony without the assistance of counsel – attempts to balance the competing interests.  Given the conflicting interests at stake, none of the alternatives is completely satisfactory, but the free narrative approach offers a reasonable opportunity to achieve a fair balance.

3.   The record in the present case

In the present case, the record reveals that there was an off-the-record discussion between defense counsel and the military judge from which Appellant was excluded.  The details of this conversation were not revealed on the record, and it is not clear whether Appellant was aware of all the details. Although we may speculate as to the reasons which led defense counsel to request withdrawal – a request that ultimately resulted in Appellant testifying without the benefit of counsel -- the record in the present case provides no direct evidence of

the circumstances that led counsel to make such a request. Although the military judge directed defense counsel to prepare a memorandum that might have addressed those issues, counsel either failed to do so or failed to preserve the memorandum.

With the record in this posture, we cannot determine whether the actions of trial defense counsel resulted in a denial of Appellant's Sixth Amendment right to the effective assistance of counsel. Accordingly, we remand the case with direction for a hearing pursuant to Dubay, before a military judge other than the Judge who presided at Appellant's court-martial, to address the following questions: (1) What information, if any, led defense counsel to perceive that testimony by Appellant would present an ethical problem? (2) What inquiry, if any, did defense counsel make? (3) What facts were revealed by the inquiry? (4) What standard, if any, did defense counsel apply in evaluating those facts? (5) What determination, if any, did defense counsel make with respect to prospective testimony by Appellant in light of those facts? (6) After making any such determination, what information and advice, if any, did counsel provide to the Appellant? (7) What response, if any, did Appellant make? (8) What information was disclosed by the two defense counsel during their off-the-record conversation with the military judge?

The military judge conducting the Dubay hearing shall make findings of facts on the foregoing questions and such other matters as may be pertinent to the issues specified in our grant of review. The military judge shall also reach conclusions of law on the specified issues.

4. Future cases

Given the state of the record in this case, we do not view the present appeal as the appropriate vehicle for prescribing detailed standards by which we will judge the constitutional effectiveness of counsel in situations involving potential client perjury. The present case, however, illustrates the need for a greater degree of guidance than provided by the present rules. See McCarthy & Brook, supra, at 148-53 (describing the problems facing counsel and courts and the need for greater clarity). We have identified a number of steps that counsel and military judges may consider taking to reduce the potential for confusion and error.

At the outset, the defense counsel should conduct an appropriate investigation into the validity of evidence that is likely to be offered at trial, including prospective testimony by the accused. If such an investigation provides the attorney with a firm factual basis for determining that that the prospective testimony is false, the attorney should have a

discussion with the client that reviews the facts, the basis for the attorney's concern, and the potential consequences for the accused if the client persists in a desire to provide the testimony. The advice should cover consequences in terms of the obligation to tell the truth, pertinent criminal sanctions, tactical considerations at trial, and the effect of testimony in a free narrative form. If the accused persists, the attorney should request an on-the-record ex parte proceeding before the military judge, which would be attended by the accused. A motion to withdraw should not be made or granted in any case unless the circumstances as a whole have produced such an irreconcilable conflict between counsel and the accused that effective representation no longer is possible. At the ex parte proceeding, the attorney should advise the military judge that the client wishes to testify and that the client will testify in free narrative form. The military judge should not inquire into the reasons, but should: (1) remind the attorney of the obligation to conduct an appropriate investigation that demonstrates the basis for the concern; (2) ensure that the accused understands the consequences of testifying in free narrative form; (3) ask the attorney and the client to have a further conversation during a recess prior to making a final decision as to how to proceed; and (4) direct the attorney to prepare a memorandum describing the attorney's investigation,

factual concerns, and advice provided to the accused.  If, after such a recess, the accused decides to proceed with the testimony, the attorney and the accused should notify the military judge of that decision in an ex parte proceeding. Prior to the conclusion of the trial, the military judge should ensure that defense counsel submits a copy of the memorandum under seal.  The document should be attached to the record as a sealed exhibit and should remain sealed, except to the extent release is directed during appellate review upon an appropriate showing and subject to appropriate protective orders.  See, e.g., United States v. Dorman, 58 M.J. 295 (C.A.A.F. 2003)(concerning access by appellate defense counsel).

Because the actual circumstances – including service regulations and potentially applicable state bar ethical rules –- may require counsel to consider variations in the suggested standards for assessing whether the evidence is false and related procedures for addressing the matter at trial, we emphasize that these are available measures that may prove useful at trial, and that we are not establishing mandatory requirements at this time.  In the course of adapting these measures to the needs of a particular case, the military judge and counsel for the parties should keep in mind their respective responsibilities with regard to the truth-seeking purposes of a

trial, consistent with applicable constitutional, statutory, and ethical considerations.


### III. DECISION

The decision of the United States Army Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a hearing under pursuant to DuBay consistent with this opinion.  The military judge at such hearing shall make findings of fact and conclusions of law and then return the record of trial to the Court of Criminal Appeals for further review of the specified issues.

United States v. Baker, No. 02-0334/AR

CRAWFORD, Chief Judge (dissenting):

In keeping with Supreme Court precedent, and in the interest of judicial economy, I would apply Strickland v. Washington, 466 U.S. 668 (1984), and employ a harmless error analysis before returning the case for a DuBay hearing. See United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1962). Because counsel's "ineffectiveness" had no impact on the fairness of Appellant's proceeding, I would find that the error was harmless.

Both the Government and Appellant would benefit from a Strickland analysis in this case. Appellant's allegation of ineffective assistance of counsel waives the attorney/client privilege and the confidential communications that transpired between Appellant and his counsel. United States v. McClain, 50 M.J. 483, 488 (C.A.A.F. 1999). Thus, Appellant would enter the DuBay hearing without these safeguards and potentially subject to a future perjury prosecution. Moreover, applying Strickland avoids putting this Court into a speculative mode regarding how these inquiries should be handled in the future.

It is important to recognize at the outset that the purpose of the trial, as well as the roles of counsel, Appellant, and the trial judge, vary depending on, among other things, who the fact finder is in each case. I agree with the majority that the purpose of a trial is truth seeking "consistent with applicable

United States v. Baker, No. 02-0334/AR

constitutional, statutory, and ethical considerations." ___

M.J. (24).

The Supreme Court has long recognized that "[a]ll perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial." In re Michael, 326 U.S. 224, 227 (1945). A trial must rest upon truth finding and a defendant does not have the right to present perjuried testimony. Nix v. Whiteside, 475 U.S. 157, 175 (1986). When there is a trial by jury -- but a finding by a trial judge of perjury beyond a reasonable doubt, or a firm factual basis for such a finding -- the trial judge has the right to preclude the defendant from testifying at all. This purpose and its consequence must be recognized,[1] even though

---

[1] The full Article 39(a) transcript indicates that Appellant implicitly admitted his testimony was inconsistent.

> MILITARY JUDGE: Now, they [Appellant's defense counsel] haven't told me anything more than that, but what I read into that -- and this is what I'm reading into it -- is that they expect or they're thinking that you are going to <u>testify inconsistently with what you have said before</u>. Okay?
>
> ACCUSED: <u>Yes, ma'am.</u>
>
> MILITARY JUDGE: Just based on the fact that they want off the case, that's the reason I think it is.
>
> What I'm tellin you is this, that --
>
> Captain [B], am I right? Is the court right that you do not even feel that you can ethically put your client on the stand and not even ask him any questions, and just --?
>
> CPT [B]: That's correct, ma'am.
>
> MILITARY JUDGE: Captain [M], is the same true for you?

2

there is a dispute among the courts as to the roles of the various participants depending on the factual scenario.  Because of this dispute, this Court should address each case on an individual basis.

"The military, like the Federal and state systems, has hierarchical sources of rights," and chief among those sources is the Constitution of the United States.  United States v. Lopez, 35 M.J. 35, 39 (C.M.A. 1992).  In rendering our decisions, we look to the highest source of authority, "unless a lower source creates rules that are constitutional and provide greater rights for the individual."  Id.

The Sixth Amendment to the Constitution provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defense."  In Strickland, the Supreme Court outlined a two-prong test to determine if counsel's assistance to the accused was ineffective, and therefore violated the Sixth Amendment.

> First, the defendant must show that counsel's
> performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment.
>
> Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to

---

CPT [M]:  Yes, ma'am.

(Emphasis added.)

3

>   deprive the defendant of a fair trial, a trial whose
>   result is reliable.

466 U.S. at 687 (emphasis added).  The Court added that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id. at 697 (emphasis added).

In Nix, the Court determined that counsel's threat to withdraw if the defendant perjured himself did not "establish the prejudice required for relief under the second strand of the Strickland inquiry."  Defense counsel is ethically obligated "to take steps to persuade a criminal defendant to testify truthfully, or to withdraw," and in so doing does not deprive the defendant of his Sixth Amendment right to counsel.  Id. at 173-74.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Court again interpreted Strickland, opining that testing for prejudice involves more than a determination that the outcome would have been different.  Rather, "[i]t focuses on the question whether a counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Id. at 372. A proceeding is only unfair if counsel's ineffectiveness "deprive[d] the defendant of any substantive or procedural right to which the law entitles him."  Id.  "To set aside a conviction or sentence solely because the outcome would have been different

4

but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Id. at 369-70.

Applying this standard to the facts at hand, it is clear that Appellant was not prejudiced by counsel's actions, as there was no impact at all on the fairness of the proceeding. As the chart below indicates, although Appellant was charged with twelve specifications, all of which he contested, he was found guilty of only four.

Setting aside Appellant's testimony, the documents admitted at trial and the testimony from Appellant's chain-of-command, civilian supervisor and peers, prove his guilt of the guilty findings below beyond a reasonable doubt of four of the twelve specifications:

| | Charge | Spec | Plea | Finding |
|------|---------------------|------|------|--------|
| I | Attempted larceny | only | NG | Guilty |
| II | Absence from duty | 1 | NG | NG |
| | | 2 | NG | Guilty |
| | | 3 | NG | NG |
| | | 4 | NG | NG |
| III | Willful disobedience | 1 | NG | NG |
| | | 2 | NG | Guilty |
| | | 3 | NG | Guilty |
| IV | Willful disobedience | 1 | NG | NG |
| | | 2 | NG | NG |
| V | Dereliction of duty | only | NG | NG |
| VI | Larceny | only | NG | NG |

5

Charge I and its specification -- attempted larceny of over $369 worth of ink cartridges.  Often Appellant was seen carrying his own personal computer but never a printer.  When buying supplies for the supply store, he bought several ink cartridges costing more than $9 each that did not fit any of the units printers.  Master Sergeant (MSG) Randall Hyde told Appellant not to buy these cartridges because they were useless.  When these cartridges were found to be missing, MSG Hyde asked Appellant where they were and "he gave me a little smile on his face.  Okay?  And I told him to get my toner cartridges now and bring them back to the Supply Room."  The cost of these was approximately $369.  Later, even though Appellant had been told not to buy any more, MSG Hyde noticed that three more cartridges were bought.

Charge II, specification 2 -- absences.  Appellant's supervisor noted Appellant's lunch breaks between September 1st and 17th, lasting more than an hour and a half without seeking permission from the supervisor or giving an explanation for the absence upon his return.  Mrs. Sheila Speers McCaskill testified he "never took the [normal] one hour lunch," but, rather, three-hour lunches.  Nor did Appellant seek permission for these extended breaks.  Many times he was given several simple tasks that would take 15 to 20 minutes, but he would be gone at least

an hour.  During some of these instances, he took a government vehicle and Ms. McCaskill had no idea of his whereabouts.

Charge III, specification 2 and 3 -- haircut orders.
Brigadier General Lambert, Lieutenant Colonel (LTC) Kirk A. Moeller's supervisor, was disappointed with Appellant's appearance and haircut and told LTC Moeller to make sure that Appellant got a haircut.  Appellant did not, and was counseled for unacceptable behavior by refusing to get a haircut.  He was given a second order which he again disobeyed.  A third order was given to him.  This time to ensure he obtained a haircut, the acting first sergeant agreed to accompany Appellant to the barbershop.  However, Appellant left the area after being told to wait by the acting first sergeant.  The acting first sergeant checked the two barbershops at Patch Barracks and did not find Appellant on either occasion.  When he eventually saw Appellant, he noted his haircut did not pass military standards.  His appearance was so poor he was told not to return to the office until he had a proper haircut.

Moreover, given that Appellant was convicted of only four specifications, far from harming Appellant, counsel's remedial actions, and the resultant sequence of proceedings, assisted in a relatively successful defense.

Given the absence of prejudice to Appellant, I would find harmless error and affirm the decision below.  Accordingly, I dissent from the lead opinion.