*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Gerald R. CARTER Jr., Private First Class**
United States Army, Appellant

**No. 19-0382**
Crim. App. No. 20160770

Argued February 11, 2020—Decided April 29, 2020

Military Judge: S. Charles Neill

For Appellant: *Captain Alexander N. Hess* (argued); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond,* and *Major Kyle C. Sprague* (on brief).

For Appellee: *Captain Karey Marren* (argued)*; Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams,* and *Major Craig J. Schapira* (on brief); *Captain Brian D. Jones*.

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, SPARKS, and MAGGS, joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.

We granted review to determine: (1) whether trial defense counsel was ineffective when he did not introduce at trial a potentially exculpatory recording of Appellant's brother confessing to the crimes for which Appellant was being court-martialed; (2) whether the military judge abused his discretion by not granting a mistrial for all charges and specifications; and (3) whether the military judge committed plain error by admitting evidence of historical cell site location data obtained without a warrant. We decide all three issues in the negative and affirm the decision of the lower court.

A general court-martial with officer and enlisted members found Appellant guilty, contrary to his pleas, of five specifications of sexual abuse of a child, one specification of extortion, and two specifications of possession of child pornography, in violation of Articles 120b, 127, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 927, 934 (2012). The

panel sentenced Appellant to a dishonorable discharge and eight years of confinement. The convening authority approved the sentence as adjudged, and the U.S. Army Court of Criminal Appeals affirmed the findings and sentence. *United States v. Carter*, No. ARMY 20160770, 2019 CCA LEXIS 140, at *2, 2019 WL 1451274, at *1 (A. Ct. Crim. App. Mar. 28, 2019) (unpublished).

## I. Background

During the relevant time frame, Appellant was stationed at Fort Drum, New York. From June 3 to June 30, 2015, Appellant was temporarily assigned to Fort Polk, Louisiana, for training. Both before and during Appellant's training assignment at Fort Polk, a Kik[1] user with the nom de plume "Julio Carter" exchanged nude images and communicated indecent language to several young girls, and extorted nude images from another. A week after Appellant's return to Fort Drum, special agents from Army Criminal Investigation Command (CID) searched his phone and discovered "Julio Carter's" Kik account, with the incriminating messages and photos. Additional facts are included below as necessary.

## II. Ineffective Assistance of Counsel

### A. Additional Facts

In March of 2016, at the Article 32, UCMJ, 10 U.S.C. § 832 (2012), preliminary hearing, a man identifying himself as Appellant's brother, Gerard, appeared telephonically and stated that he borrowed Appellant's phone while Appellant was away at Fort Polk, and used it to send and solicit the nude images from the young girls. At the same hearing, Appellant's wife corroborated this story, telephonically, saying that she remembered Appellant getting a new phone with a new number when he went to Fort Polk in June 2015.

Trial defense counsel understood the Article 32, UCMJ, testimony to be that the phone investigators had seized from Appellant, which contained the incriminating photos and messages, was in Gerard's possession in June of 2015 and that Appellant used a different phone while at Fort Polk.

---

[1] Kik is a peer-to-peer messaging application that allows users to send photos, texts, and videos.

Trial defense counsel hired a digital forensic examiner (DFE) to examine the metadata from the seized phone to determine whether it supported Gerard's confession. It did not. The DFE told trial defense counsel that some of the photos on the phone were taken at Fort Polk, and so the phone was with Appellant at Fort Polk and not with Gerard at Fort Drum as Gerard claimed in his confession.

Appellant suggested an alternate explanation to his defense counsel: there were two phones that shared an iCloud account and the Kik messages were synched from the phone at Fort Drum to the phone at Fort Polk.[2] Before trial defense counsel could verify this theory with the DFE, he gave his opening statement. Relying on Appellant's theory, trial defense counsel promised members they would hear a confession:

> DC: This case is about someone else, who is not here today. Who, *you will hear* accepted responsibility for these actions. *You will hear* testimony that at the preliminary hearing accused's brother stated under oath … that his brother is completely innocent of these charges, that he assumed the identity of his brother to meet women…. *You will hear* their testimony and they took full responsibility of the charges in this case.

(Emphasis added.)

Before his case-in-chief, trial defense counsel consulted with the DFE on the alternate theory. The DFE elaborated on his analysis, explaining that the metadata from the photos confirmed that the incriminating photos were taken by the device seized from Appellant, not synched from another phone. Since this DFE's analysis contradicted Gerard's testimony that he was in possession of the phone, trial defense counsel believed the confession was false, and so did not play the recording of Gerard's telephonic confession for the members.

---

[2] There is some dispute as to when the alternate theory was presented to the defense team. This is not relevant to the issue before us—whether it was reasonable for defense counsel to doubt that the "cloud synch" theory invalidated the DFE's analysis of the forensic evidence and the Article 32, UCMJ, testimony.

## B. Law

"We review assertions of ineffective assistance of counsel de novo." *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citing *United States v. Gooch,* 69 M.J. 353, 362 (C.A.A.F. 2011)). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To overcome the presumption, an appellant must "show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'" *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)).

In this case, Appellant alleges that his trial defense counsel was deficient by not presenting the recording of Gerard's confession at trial. However, trial defense counsel believed the confession to be false, and the Rules of Professional Conduct prohibited counsel from introducing evidence that he knew was false, and permitted counsel to refuse to offer evidence he reasonably believed was false. *See* Dep't of the Army, Pam. 27-26, Legal Services, Rules of Professional Conduct for Lawyers, para. 3.3(a)(4) (May 1, 1992). "Under [an attorney's] ethical obligations ..., the attorney cannot close his or her eyes to the possibility that the proposed testimony is false." *United States v. Baker*, 58 M.J. 380, 385 (C.A.A.F. 2003).

## C. Discussion

### i. *Counsel's Performance*

The Government's primary evidence consisted of messages and images found on an iPhone 6, seized from Appellant. Trial defense counsel understood Gerard's confession to be that Gerard was in New York, and used the phone seized by CID to send messages and images to girls while Appellant was in Louisiana. In a post-trial affidavit, the defense expert explained that he told trial defense counsel that it was "a fact

and not an opinion" that this was false. Based on two conversations with his own expert, and a similar report from the Government expert, trial defense counsel reasonably believed that Gerard's confession was false, and so could refuse to offer it at trial.

On appeal to this Court, Appellant challenges the reasonableness of trial defense counsel's belief by focusing on whether the *Kik messages* could have synched across phones. This was not the focus of trial defense counsel's investigation, and for good reason: even if the messages could have synched between phones, Gerard's confession was that he had *Appellant's phone*—the one seized by investigators. The DFE unequivocally stated that this was false. Finally, after consultation with trial defense counsel, Appellant agreed that it would not be in his best interest to play the recording or to testify.

On appeal, Appellant also argues that it was unreasonable for trial defense counsel to mention the confession in his opening argument. While it would have been better for Appellant had trial defense counsel not promised the members that they would hear a confession, Appellant bears responsibility for encouraging his attorney to offer a false confession. Appellant can hardly mislead his attorney and then fault him for believing and acting on his claims.

Finally, Appellant argues that if trial defense counsel could refuse to play the *confession,* because he believed it was false, then he would also have had a duty to not argue the cloud synch *theory*. This misapprehends counsel's duties. While trial defense counsel was prohibited from introducing *evidence* he knew was false, he had a responsibility to sow doubt in the minds of members, using the evidence presented at trial.

At trial, VG mentioned that she met with someone who claimed to be Appellant's brother. A CID agent testified that Appellant mentioned his brother when he was initially questioned. Cloud synching came out during cross-examination of a Government witness. Trial defense counsel argued all the evidence that was properly admitted at trial, and appropriately refused to submit evidence that he believed to be perjured. It was not unreasonable for trial defense counsel to rely on his expert witness's analysis of the forensic evidence. His

conduct therefore "f[ell] within the wide range of reasonable professional assistance" and was not ineffective. *Strickland*, 466 U.S. at 689.

## ii. *Prejudice*

Finally, even if it were unreasonable for trial defense counsel to not play the confession for the members, Appellant cannot show prejudice. Though he did not play the perjured confession for the members, trial defense counsel made a valiant effort to present a defense and there is no reasonable probability that the outcome of the court-martial would have been different had he played it. He elicited testimony that some data can be synched over the cloud. He presented a witness who claimed to have met a "Julio Carter" who was not Appellant. Indeed, it is likely that not playing the confession helped Appellant, as the confession would have been immediately impeached by the Government forensic expert, resulting in the brother theory being discarded altogether. Trial defense counsel instead properly preserved the possibility of doubt for the members without violating his ethical duties.

## III. Mistrial

Appellant's second assigned issue is whether the military judge abused his discretion by failing to order a complete mistrial for a government discovery violation.

## A. Additional Facts

In addition to the sexual offenses against children under the age of sixteen, Appellant was charged with committing adultery with a young woman, MR, who was seventeen at the time of the alleged offense. MR took the stand at trial, ostensibly to identify Appellant as the man she had sex with. Her testimony took a dramatic turn when she stated that Appellant was *not* the man she met. The Government then asked her if she had been offered $1000 to misidentify Appellant. Trial defense counsel immediately objected and the military judge took a recess to address the matter outside of the members' presence.

At the subsequent Article 39(a), UCMJ, 10 U.S.C. §839(a), session, trial defense counsel argued that the Government's failure to provide notice of the alleged payment was a serious discovery violation that warranted a mistrial on all charges

and specifications. The military judge granted a mistrial as to the adultery specification, but not the other offenses. Explaining why a full mistrial was not warranted, the military judge noted that the alleged payments were not attributed to the accused and there was nothing connecting MR to any of the other victims or crimes in the case. The military judge then issued curative instructions to the members informing them that he had conducted a hearing about the vague bribery allegations and found them unsubstantiated and instructing them to disregard all of MR's testimony and any inferences that anyone attempted to bribe a witness in this case.

## B. Law and Discussion

A military judge "may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts-Martial (R.C.M.) 915(a). The Discussion to R.C.M. 915(a) cautions that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons," including times "when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members." Consequently, "[a]bsent clear evidence of an abuse of discretion, this Court will not reverse a military judge's determination on a motion for mistrial." *United States v. Short*, 77 M.J. 148, 150 (C.A.A.F. 2018). Curative instructions are the preferred remedy, and "[a]bsent evidence to the contrary, a jury is presumed to have complied with the judge's instructions." *United States v. Barron*, 52 M.J. 1, 5 (C.A.A.F. 1999) (quoting *United States v. Rushatz,* 31 M.J. 450, 456 (C.M.A. 1990)).

Here, the military judge carefully considered the bribery allegation's effect on the trial. He ordered a mistrial for the adultery specification, as trial defense counsel was in the "untenable position of disputing bribery claims of a witness, claims that were not disclosed until the middle of trial." He further instructed the members to disregard the testimony and the bribery allegations. Although it is questionable

whether the military judge should have instructed the members to disregard MR's testimony in its entirety,[3] Appellant has not shown "clear evidence" that the military judge abused his discretion by limiting the mistrial to the affected specification. We therefore affirm the military judge's mistrial determination.

### IV. Historic Cellphone Location Data

Appellant's final assigned issue is whether the military judge committed plain error by admitting into evidence Appellant's historic cell site location information (CSLI) pursuant to the Stored Communications Act (SCA), 18 U.S.C. § 2701, in violation of the Fourth Amendment. We hold that he did not.

The SCA does not contain a warrant requirement for CSLI, and so the military judge in this case did not require the Government to show probable cause before ordering Sprint to turn over Appellant's CSLI. After Appellant's trial, the Supreme Court determined that the Fourth Amendment's warrant requirement extended to seven days of historic cell-site location data. *United States v. Carpenter,* 138 S. Ct. 2206, 2217 (2018). We need not decide whether the information used in Appellant's trial would violate *Carpenter*, as even if so, it would be admissible in this case under the good faith exception of Military Rule of Evidence (M.R.E.) 311(c)(4).

M.R.E. 311(c)(4) codifies the Supreme Court's holding in *Illinois v. Krull,* and allows the admission of evidence that would otherwise violate the Fourth Amendment if the "official seeking the evidence acts in an objectively reasonable reliance on a statute later held invalid under the Fourth Amendment." M.R.E. 311(c)(4); *see also Illinois v. Krull*, 480 U.S. 340, 350 (1987). Here, the military judge relied on the SCA to order Sprint to produce the CSLI. Since the SCA did not require a warrant, and it was objectively reasonable to rely on

---

[3] While MR did testify that Appellant was not the man she committed adultery with, MR had not testified that she met "Julio," and so her negative identification of Appellant was not related to whether Appellant was "Julio." Further, Appellant presented another witness, VG, who testified that she met "Julio" and he was not Appellant.

it, M.R.E. 311(c)(4) renders the evidence admissible. Therefore, the military judge did not commit plain error by admitting evidence of Appellant's CSLI.

## V. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.