555 F.2d 115
 UNITED STATES of America ex rel. Norman WILCOX H-5413
v.
R. JOHNSON, Supt. of S.C.I.G., Graterford, Pennsylvania.
Appeal of the COMMONWEALTH of Pennsylvania.
 No. 76-2091.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 25, 1977.
Decided April 29, 1977.
 
 Before GIBBONS, FORMAN and ROSENN, Circuit Judges.
 Mary Bell Hammerman, Philadelphia, Pa., for appellee.
 Bruce A. Franzel, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Chief, Motions Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, F. Emmett Fitzpatrick, Dist. Atty. Philadelphia, Pa., for appellant.
 OPINION OF THE COURT
 FORMAN, Circuit Judge.
 
 
 1
 This is an appeal by the Commonwealth of Pennsylvania from an order of the United States District Court for the Eastern District of Pennsylvania granting a writ of habeas corpus. The major issue presented here is whether appellee was unconstitutionally deprived of the right to testify at his own trial. We conclude that he was and, accordingly, we affirm the grant of the writ.
 
 I.
 
 2
 Norman Wilcox, the appellee, was convicted of rape in 1967 after a non-jury trial in the County Court of Philadelphia, and was sentenced to a term of imprisonment from four to ten years. At that trial, the defense proceeded on an alibi theory and presented Mr. Wilcox, his wife and his brother-in-law to establish the non-involvement defense. Following the denial of post-trial motions, direct appeals and collateral attacks under the Pennsylvania Post Conviction Hearing Act,[1] Mr. Wilcox filed a Petition for a Writ of Habeas Corpus on September 26, 1967 in the United States District Court for the Eastern District of Pennsylvania.
 
 
 3
 The District Judge granted the writ, concluding that the State Court Judge violated appellee's constitutional rights by announcing a verdict of guilty without first affording defense counsel an opportunity to make a closing argument.[2] That opinion suggested several of the arguments which might have been raised by defense counsel had he been given an opportunity to make a closing statement, and noted what the District Judge perceived to be infirmities in the Commonwealth's proof of actual force. The District Judge stayed issuance of the writ for thirty days in order to afford the Commonwealth an opportunity to retry Mr. Wilcox.
 
 
 4
 Mr. Wilcox was retried in a jury trial on December 11 and 12, 1967. At that trial Mr. Wilcox was represented by Ms. Carolyn E. Temin of the Defender Association of Philadelphia, who had previously represented appellee in an unrelated robbery case as well as at his first habeas corpus proceeding in the District Court. Ms. Temin first conferred with Mr. Wilcox only fifteen minutes before the trial was scheduled to begin.
 
 
 5
 It is apparent from Ms. Temin's voir dire examination of the jury panel[3] that she had decided to abandon the alibi defense presented at appellee's first trial and to proceed instead on the theory that the alleged victim had consented to having sexual relations with Mr. Wilcox. However, it was not until the close of the Commonwealth's case that Ms. Temin revealed her new strategy to Mr. Wilcox. Mr. Wilcox, who anticipated that the theory of defense at this trial would be one of non-involvement, told Ms. Temin that he objected to her departure from the defense theory presented at his first trial and informed her that he wanted to testify in his own behalf and to present alibi testimony from witnesses who were in the courtroom. Ms. Temin insisted on resting the defense without presenting any evidence and on making a closing argument to the jury based on the consent theory.[4] When the disagreement between Mr. Wilcox and Ms. Temin grew more pronounced, the judge recessed the trial to afford them an opportunity to reconcile their difference of opinion as to proper trial tactics.
 
 
 6
 After briefly consulting with her client, Ms. Temin requested a side-bar conference with the Trial Judge and the District Attorney to apprise them of the disagreement which existed between herself and Mr. Wilcox. Although the State court record is inexplicably devoid of the substance of this side-bar conference and the subsequent events, the District Judge found that Ms. Temin advised the Trial Judge that Mr. Wilcox demanded to testify over her objection and that if the judge permitted him to do so, she would make a motion to withdraw as counsel. Ms. Temin grounded her motion to withdraw on the belief that Mr. Wilcox's direct testimony as to non-involvement in the rape would have been perjured testimony, which she felt could not ethically be presented to the jury.[5] The District Court also found that Ms. Temin, communicating the Trial Judge's ruling, informed Mr. Wilcox that if he insisted on testifying, Ms. Temin would be permitted to withdraw as counsel, and he would have to represent himself during the remainder of the trial. After being informed of the Trial Judge's ruling, Mr. Wilcox decided not to testify and the defense rested without presenting any evidence. Mr. Wilcox was convicted a second time and again was sentenced to a period of incarceration for four to ten years.
 
 
 7
 Following unsuccessful post-trial motions, direct appeals and collateral attacks in the State courts, Mr. Wilcox filed the present Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Pennsylvania. An evidentiary hearing was subsequently held on February 14, 1975. The District Judge granted the writ of habeas corpus concluding that Mr. Wilcox would have taken the stand had it not been for the Trial Judge's ruling that if he did so, he would have to forego his constitutional right to counsel. The District Judge held that Mr. Wilcox had a constitutional right to take the stand and testify in his own behalf, which only he could waive. The District Judge further held that the conduct of Mr. Wilcox's counsel and the rulings of the Trial Judge impinged upon that constitutional right and deprived the appellee of his fundamental right to a fair trial. The Commonwealth brought this appeal.
 
 
 8
 The Commonwealth argues that the appellee was not deprived of a fair trial, since Mr. Wilcox had no constitutional right to testify in his own behalf and since Ms. Temin, as a matter of trial strategy, waived the appellee's statutory right to testify.II.
 
 
 9
 As the District Judge reasoned, under the common law, criminal defendants were not competent to give sworn testimony in their own behalf. This disability has been removed by the enactment of federal[6] and state[7] laws granting the privilege of an accused to testify in his own defense. The right to testify is not specifically granted by the Constitution. Thus, if a defendant in a State court has a Federal constitutional right to testify, that guarantee must emanate from the due process requirements of the Fourteenth Amendment. See U. S. v. Ives, 504 F.2d 935 (9th Cir. 1974), vacated 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975).
 
 
 10
 A number of cases have specifically held that a criminal defendant has no constitutional right to testify in his own behalf. Sims v. Lane, 411 F.2d 661 (7th Cir. 1969), cert. denied, 396 U.S. 943, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); Sims v. State, 246 Ind. 660, 208 N.E.2d 469 (1965); Kinder v. Commonwealth of Ky., 269 S.W.2d 212 (Ky.1954); State v. Hutchinson, 458 S.W.2d 553 (Mo.1970) (en banc); cf. U. S. v. Von Roeder, 435 F.2d 1004 (10th Cir. 1970), cert. denied, 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 713 (1971). Another line of cases, while avoiding the question of whether the "right to testify" is of constitutional dimension, have stated that no relief can be granted where competent counsel makes a strategic determination that the defendant not testify. U. S. v. Poe, 122 U.S.App.D.C. 163, 352 F.2d 639 (1964); U. S. v. Gargulio, 324 F.2d 795 (2d Cir. 1963); Sims v. State, supra; Kinder v. Commonwealth of Ky., supra. However, as the District Judge concluded: "(r)ecent decisions, in both the state and federal courts, have cast considerable doubt on the continued validity of the (above) cases . . . ." (D.C.Op. at 13).
 
 
 11
 Numerous federal cases have intimated that a defendant in a criminal trial may have a constitutional right to testify. Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), stated: "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." In Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct.1891, 32 L.Ed.2d 358 (1972), the Supreme Court held that a Tennessee statute which required that a criminal defendant who desires to testify must do so before any other testimony for the defense is presented, violates the defendant's privilege against self-incrimination. The Court noted that "whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." 406 U.S. at 612, 92 S.Ct. at 1895. Winters v. Cook, 489 F.2d 174, 179 (5th Cir. 1974), stated that criminal defendants' right to testify personally is "such an inherently personal fundamental right that it can be waived only by the defendant and not by his attorney." U. S. v. Bentvena, 319 F.2d 916 (2d Cir. 1963), cert. denied sub nom., Ormento v. U. S., 375 U.S. 940, 943, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), recognized that "the statutory 'privilege' to testify in one's own behalf has come to be recognized as having an importance similar to the right to be present at one's trial and to present a defense." In Poe v. United States, 233 F.Supp. 173 (D.D.C.1964), aff'd, 122 U.S.App.D.C. 163, 352 F.2d 639, the court granted a new trial where the erroneous advice of trial counsel dissuaded defendant from testifying in his own defense. Judge J. Skelly Wright, sitting by special designation as Trial Judge, remarked that:
 
 
 12
 "the right to testify is a basic right, and there is an obligation on the part of both the Court and trial counsel to inform the accused of his right to testify, if he so desires. Further, it is the duty of both to assure that the exercise of this basic right by the accused is a free and meaningful decision. The right to testify is personal to the accused. He must make the ultimate decision on whether or not to take the stand. In this regard, it is unlike other decisions, which are often called 'trial decisions,' where it is counsel who decides whether to cross-examine a particular witness or introduce a particular document. Here it is the accused who must decide and it is the duty of counsel to present to him the relevant information on which he may make an intelligent decision." Poe v. U. S., supra, at 176.
 
 
 13
 Furthermore, the Supreme Courts of three states have specifically held that a defendant in a criminal proceeding has a constitutional right to testify. People v. Robles, 2 Cal.3d 205, 85 Cal.Rptr. 166, 466 P.2d 710 (Cal.1970); Hughes v. State, 513 P.2d 1115 (Alaska 1973); State of Arizona v. Nobel, 514 P.2d 460 (Ariz.1973). These cases teach that a criminal defendant's right to testify in his own defense is of such fundamental importance that no defendant should "be deprived of exercising that right and conveying his version of the facts to the court or jury, regardless of competent counsel's advice to the contrary." Hughes v. State, supra, at 1119.
 
 
 14
 The District Judge examined this most recent line of federal and state cases, and having discerned an enlightened trend, concluded:
 
 
 15
 "In my view, Wilcox had a constitutional right to testify at his second rape trial. The approach to this issue suggested in Simms (Sims) v. Lane, (411 F.2d 661 (7th Cir. 1969)), is far too inflexible, and is too easily subject to abuse. The analysis of a criminal defendant's right to testify, as set forth in (People v. Robles, (2 Cal.3d 205), 85 Cal.Rptr. 166, (466 P.2d 710) (1970); Hughes v. State, 513 P.2d 1115 (Alaska 1973); and U. S. v. Bentvena, 319 F.2d 916 (2d Cir. 1963)), properly focuses on the defendant's right to participate actively in the defense of his case. The importance of preserving this right could not be more apparent than it is in this case, where the judge and jury at the second criminal trial were asked to sit through a charade, simply because trial counsel felt that a defense based on 'consent' would be more advantageous to the defendant. Any contrary holding would strongly imply that if state statutes authorizing criminal defendants to testify were repealed, thereby rendering criminal defendants incompetent to testify, a state court could constitutionally refuse to permit any criminal defendant from testifying. Such a result clearly would be out of step with the current state of the law. Indeed, it would be ironic to find that the right against self-incrimination is entitled to constitutional protection, but the right to articulate a defense is not." D.C.Op. at 16-17.
 
 
 16
 It appears that the District Judge's pronouncement of a criminal defendant's constitutional right to testify in his own behalf fairly reflects the recognition of such a right by the federal courts. However, apart from consideration of whether Mr. Wilcox's right to testify is of constitutional dimension, he is entitled to habeas corpus relief under our holding in United States v. Garcia, 544 F.2d 681 (3d Cir. 1976).[8]
 
 III.
 
 17
 In Garcia, two defendants pled guilty to one count of possessing with intent to distribute cocaine, as part of a plea agreement with the United States Attorney. The District Judge announced that in order for the defendants to obtain lenity on their sentence they had to furnish the prosecutor with information which would be of assistance in stamping out the drug problem. The defendants were required to furnish this information without any assurance that they would not be subsequently indicted for other acts not encompassed in the plea agreement.
 
 
 18
 This court held that the sentencing procedures employed by the District Court trenched upon defendants' Fifth Amendment right against self-incrimination. Speaking through Judge Aldisert, the court concluded that:
 
 
 19
 "The appellants were put to a Hobson's choice: remain silent and lose the opportunity to be the objects of leniency, or speak and run the risk of additional prosecution. A price tag was thus placed on appellants' expectation of maximum consideration at the bar of justice: they had to waive the protection afforded them by the Fifth Amendment. This price was too high. We, therefore, cannot permit the sentence to stand." 544 F.2d at 685.
 
 
 20
 In the instant case, Mr. Wilcox definitely had a statutory right to testify under Pennsylvania law.[9] The District Court found that Mr. Wilcox made a timely demand to testify and that he decided not to testify only after the Trial Judge ruled that if he took the stand, his counsel would be permitted to withdraw, and he would be forced to represent himself. Mr. Wilcox's right to testify was never waived, either by the appellee himself, or by his counsel, Ms. Temin. The District Court found that Ms. Temin returned from the side-bar conference and informed Mr. Wilcox of the judge's ruling. Mr. Wilcox then decided not to testify because he "did not feel competent enough to argue (his) case before the jury and court."[10] The District Judge found that these facts clearly reflected his view that "Wilcox would have taken the stand had it not been for (the Trial Judge's) ruling that if he did so, he would have to forego his constitutional right to counsel." D.C.Op. at 10. The District Judge recognized that Mr. Wilcox was placed in a "completely untenable position" by the Trial Judge and defense counsel in being forced to choose between his right to testify and his right to counsel.
 
 
 21
 As in Garcia, the appellee here "was put to a Hobson's choice": decline to testify and lose the opportunity of conveying his version of the facts to the jury, or take the stand and forego his fundamental right to be assisted by counsel. The Trial Judge thus conditioned the exercise of Mr. Wilcox's statutory right to testify upon the waiver of rights guaranteed by the Constitution. This was an impermissible infringement upon the appellee's right to testify and his Sixth Amendment right to counsel.
 
 
 22
 A defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted.
 
 
 23
 Mr. Wilcox was entitled both to testify in his own behalf and to be represented by counsel. If the Trial Judge believed that upon appellee's taking the stand, defense counsel should have been permitted to withdraw from the case, then Mr. Wilcox was entitled to substitute counsel. The threatened loss of counsel here not only violated appellee's Sixth Amendment rights but worked as a lever to pry from appellee his statutory right to testify. Mr. Wilcox was deprived of his fundamental right to a fair trial. Therefore, the District Court's order granting the petition for a writ of habeas corpus will be affirmed.
 
 IV.
 
 24
 In light of our view that, in this case, the Trial Court's ruling trenched upon Mr. Wilcox's Sixth Amendment right to counsel, it is not necessary to reach the issue of whether defense counsel's conduct deprived appellee of the reasonably competent assistance of a diligent attorney.[11] We do find it necessary, however, to make certain observations concerning the problem with which defense counsel was faced here.
 
 
 25
 During the cross-examination of Mr. Wilcox's trial counsel, Ms. Temin, at the federal habeas corpus evidentiary hearing, the following colloquy between Judge Fullam and Ms. Temin took place:
 
 
 26
 "Ms. Temin: I have been present in court during the testimony of the defendant in the case, the relator here, and I have heard his testimony, and although he has a much better recollection of the details of what occurred than I do, I do recall that he did want to take the stand, that he did want to present an alibi defense, and that I refused to present this for him, because I felt this was a perjured defense.
 
 
 27
 "BY THE COURT:
 
 
 28
 "Q. On what basis did you say that? He had already testified to that effect at the first trial and had presented that defense at the first trial, had he not?
 
 
 29
 "A. That is correct, Your Honor, he had.
 
 
 30
 "Q. Did you have any basis for your belief that
 
 
 31
 "A. Well, I had represented Mr. Wilcox at this point for almost two years. I had represented him from sometime in 1966, I don't recall the exact date, his trial at that time. The first trial at which I represented him took place in December of 1966, and I don't recall if I had a lot of prior contact with him or just a few days prior contact with him at that time, but I had then represented him continuously from that time.
 
 
 32
 "This case was unusual in that regard, or let's put it this way: Mr. Wilcox was unusual in that regard, because it was not the practice of the Defender in those cases to provide one-on-one, as we call it, representation. One was usually handed a file and
 
 
 33
 "Q. I asked you a question. When are you going to get to the answer of it? What basis did you have for
 
 
 34
 "A. Your Honor, I have no specific recollection of the basis on which I decided that Mr. Wilcox's alibi defense would have been perjured. I do recall that that was my conclusion.
 
 
 35
 "Q. Did you inform him of that?
 
 
 36
 "A. Yes, I did. I informed him that I did not think that his alibi defense that I thought his alibi defense was perjured, that I didn't believe him, that I would not represent him if he chose to take the stand, that I felt the only thing we could do was to attack the testimony and the credibility of the prosecuting witness.
 
 
 37
 "Q. Is there anything in your file or anything in the record or anything anywhere that would lend support to your impression that this would have been a perjured defense?
 
 
 38
 "A. I made no note of this at this time, there is nothing that I can find in the file which I saw for the first time today." (Tr. at 61-63.)
 
 
 39
 Although there is no evidence as to whether Ms. Temin presented to the Trial Judge her view that Mr. Wilcox's testimony would be perjured, the District Court concluded that, judging from all of the circumstances, it would be reasonable to infer that she did discuss this matter with the Trial Judge.
 
 
 40
 Whether an attorney representing a defendant in a criminal case must, or indeed may, disclose his client's intentions to perjure himself is an extremely complex question which has been addressed by a number of courts[12] and commentators.[13] The American Bar Association Committee on Ethics and Professional Responsibility, Informal Opinion No. 1318 (Jan. 13, 1975) would seem to require that an attorney faced with this question withdraw from the case if feasible. If Ms. Temin, "notwithstanding that this was a criminal case, felt that (she) could not in any sense vouch for the testimony of (her) client and that to permit him to state the facts as he saw them would be to approve perjury, (she) could have requested the Court to grant (her) leave to withdraw from the case and to appoint some other attorney to represent the defendant . . .." People v. Blye, 233 Cal.App.2d 143, 43 Cal.Rptr. 231, 235 (1970). However, Ms. Temin requested to withdraw only if Mr. Wilcox insisted upon testifying. The Trial Judge's erroneous ruling, that if appellee testified he would have to represent himself during the remainder of the trial, then placed Mr. Wilcox in the dilemma of having to choose either his right to testify or his right to counsel, each in exclusion of the other.
 
 
 41
 Furthermore, there was no evidence on the record of this case indicating that Mr. Wilcox intended to perjure himself. While Ms. Temin was unable to recall the basis for her conviction that appellee's alibi defense would be perjured, we recognize that any such evidence would not be likely to appear on the record and that the federal evidentiary hearing took place more than seven years after the trial in question.
 
 
 42
 If an attorney faced with this situation were in fact to discuss with the Trial Judge his belief that his client intended to perjure himself, without possessing a firm factual basis for that belief, he would be violating the duty imposed upon him as defense counsel. While defense counsel in a criminal case assumes a dual role as a "zealous advocate" and as an "officer of the court," neither role would countenance disclosure to the Court of counsel's private conjectures about the guilt or innocence of his client. It is the role of the judge or jury to determine the facts, not that of the attorney.
 
 
 43
 It is essential to our adversary system that a client's ability to communicate freely and in confidence with his counsel be maintained inviolate. When an attorney unnecessarily discloses the confidences of his client, he creates a chilling effect which inhibits the mutual trust and independence necessary to effective representation. It is apparent that an attorney may not volunteer a mere unsubstantiated opinion that his client's protestations of innocence are perjured. To do so would undermine a cornerstone of our system of criminal justice.
 
 
 
 [1]
 19 P.S. § 1180-1 et seq
 
 
 [2]
 United States ex rel. Wilcox v. Commonwealth of Pennsylvania, 273 F. Supp. 923 (E.D.Pa.1967)
 
 
 [3]
 Ms. Temin asked the members of the jury panel whether they "(felt) that a man should be punished for having sexual relationships with a woman out of wedlock."
 
 
 [4]
 At the federal habeas corpus evidentiary hearing, Ms. Temin stated that her insistence upon Mr. Wilcox not taking the stand was based on a number of reasons. First, she believed that an alibi defense would be a perjured defense, although she had no recollection of the basis for this belief. Second, by resting without presenting a defense she would have the opportunity of making the last argument to the jury. Third, by keeping appellee off the stand, she wished to prevent the revelation of Mr. Wilcox's prior convictions through impeachment of his credibility. She also wished to prevent impeachment of Mr. Wilcox's credibility by cross-examination as to why he was wearing an Army uniform in the courtroom, since he was no longer in the service
 
 
 [5]
 The District Judge noted that
 "(t)his testimony was given by Ms. Temin at the federal habeas corpus hearing held on February 14, 1975. There is no evidence as to whether she presented to (the trial judge) her view that Wilcox's testimony would be perjured, although judging from all of the circumstances, it would be reasonable to infer that she did discuss this matter with (the trial judge)." See U. S. ex rel. Wilcox v. Johnson, No. 73-313, Opinion at 7, n.3 (E.D.Pa. June 9, 1976).
 
 
 [6]
 18 U.S.C. § 3481 provides:
 "Competency of accused
 "In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him.
 June 25, 1948, c. 645, 62 Stat. 833."
 
 
 [7]
 See, e.g., 19 P.S. § 681, infra at n.8. By the end of the Nineteenth Century, every state except Georgia had enacted legislation abrogating the common law rule of incompetence. See Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961)
 
 
 [8]
 Garcia was decided by this court subsequent to the entry of the District Court's order granting Mr. Wilcox's petition for a writ of habeas corpus. We are required to apply the law in effect at the time our decision is rendered. See, e.g., Thorpe v. Housing Authority, 393 U.S. 268, 281-82, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)
 
 
 [9]
 19 P.S. § 681 provides:
 "Competency of witnesses generally
 "Except upon a preliminary hearing before a magistrate for the purpose of determining whether a person charged with a criminal offense triable in the court of oyer and terminer ought to be committed for trial, and except also upon a hearing under habeas corpus for the purpose of determining whether bail ought to be taken upon a commitment for murder in the first degree, or for the purpose of determining in any case how much bail ought to be required, or for the purpose of determining in any case whether a person committed for trial ought to be further held, and except also upon hearings before a grand jury, in none of which cases shall evidence for the defendant be heard, and except also as provided in section two of this act, all persons shall be fully competent witnesses in any criminal proceedings before any tribunal. 1887, May 23, P.L. 158, § 1."
 
 
 [10]
 This statement was made by Mr. Wilcox at the federal evidentiary hearing held on February 14, 1975. Mr. Wilcox also testified that after being informed of the Trial Judge's ruling, he "felt crushed and . . . didn't know what rights (he) had left at the time."
 
 
 [11]
 Moore v. United States, 432 F.2d 730 (3d Cir. 1970); United States v. DeCoster, No. 72-1283, Slip Op. at 10 (D.C.Cir., filed October 19, 1976)
 
 
 [12]
 See, e.g., State v. Henderson, 205 Kan. 231, 468 P.2d 136 (1970) (attorney permitted to disclose client's intention to commit perjury)
 
 
 [13]
 See, e.g., J. Michael Callan and Harris David, Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System, 29 Rutgers L.Rev. 332 (1976) (disclosure should not be made since to do so would be tantamount to disclosing that the client is guilty of the crime charged); M. Freedman, Lawyers' Ethics in an Adversary System 3-4 (1975). Compare ABA Project on Standards for Criminal Justice: The Prosecution Function and the Defense Function, Defense Function § 7.7(c) (1971) (attorney should not disclose client's intention) with ABA Code of Professional Responsibility and Canons of Judicial Ethics, DR 4-101(c)(3), at 17 (disclosure should be made)