# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MAHER, SULLIVAN, and HOLDEN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant MICHAEL L. BAKER**
**United States Army, Appellant**

ARMY 9800743

21st Theater Army Area Command (trial)
I Corps and Fort Lewis (first and second *DuBay* hearings)
Peter E. Brownback III (arraignment), Donna M. Wright (trial), Robert J. Smith
(first *DuBay* hearing), David L. Conn (second *DuBay* hearing), Military Judges
Colonel Calvin L. Lewis, Staff Judge Advocate (trial)
Lieutenant Colonel William R. Kern, Acting Staff Judge Advocate
(first *DuBay* hearing)
Colonel David N. Diner, Staff Judge Advocate (second *DuBay* Hearing)

For Appellant: Colonel Mark Cremin, JA (argued); Lieutenant Colonel Mark
Tellitocci, JA; Major Allyson G. Lambert, JA (on brief after first *DuBay* hearing);
Captain Frank B. Ulmer (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel
Kirsten V.C. Brunson, JA; Major Billy B. Ruhling II, JA; Captain Eric D. Noble (on
brief after second *DuBay* hearing).

For Appellee: Captain Michael D. Wallace, JA (argued); Lieutenant Colonel Mark
L. Johnson, JA; Major Natalie A. Kolb, JA (on brief after first *DuBay* hearing);
Captain Mark E. Goodson (argued after second *DuBay* hearing).

10 July 2007

---------------------------------------------------------
OPINION OF THE COURT ON REMAND
---------------------------------------------------------

MAHER, Senior Judge

A special court-martial composed of officers convicted appellant, contrary to
his pleas, of attempted larceny, absence from his appointed place of duty on divers
occasions, and willful disobedience of a superior commissioned officer (two
specifications), in violation of Articles 80, 86, and 90, Uniform Code of Military
Justice, 10 U.S.C. §§ 880, 886, and 890 [hereinafter UCMJ]. The convening
authority approved the adjudged sentence to a bad-conduct discharge and reduction
to Private E1.

## PROCEDURAL HISTORY

In our initial review of appellant's case under Article 66, UCMJ, this court affirmed the findings and the sentence. *United States v. Baker,* ARMY 9800743 (Army Ct. Crim. App. 18 Jan. 2002) (unpub.). The United States Court of Appeals for the Armed Forces (CAAF) granted review as to whether appellant received effective assistance of counsel. On 1 July 2003, our superior court stated it could not "determine whether the actions of trial defense counsel resulted in a denial of Appellant's Sixth Amendment right to the effective assistance of counsel" given the record's posture. *United States v. Baker*, 58 M.J. 380, 387 (C.A.A.F. 2003). The CAAF set aside our decision and remanded the case for a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to address the following questions:

> (1) What information, if any, led defense counsel to perceive that testimony by appellant would present an ethical problem? (2) What inquiry, if any, did defense counsel make? (3) What facts were revealed by the inquiry? (4) What standard, if any, did defense counsel apply in evaluating those facts? (5) What determination, if any, did defense counsel make with respect to prospective testimony by appellant in light of those facts? (6) After making any such determination, what information and advice, if any, did counsel provide to the appellant? (7) What response, if any, did appellant make? (8) What information was disclosed by the two defense counsel during their off-the-record conversation with the military judge?

*Baker*, 58 M.J. at 387. On 15 October 2003, a convening authority ordered a *DuBay* hearing to address the issues our superior court identified. A military judge held the hearing on 9 January 2004, entered his findings on 20 February 2004, and returned the record to this court for further review. We determined *en banc* that the military judge, by allowing counsel to testify in a conclusory fashion and expressly declining to delve into specific facts, failed to provide a record on which we could reach a decision on the merits of appellant's claims. *United States v. Baker*, ARMY 9800743 (Army Ct. Crim. App. 11 May 2005) (order) (unpub.).

Accordingly, we returned the record for another *DuBay* hearing. *Id*. On 23 September 2005, the convening authority ordered a second hearing which a different military judge conducted on 5 December 2005. The military judge entered his findings on 6 January 2006.

2

BAKER – ARMY 9800743

The record is again before us for further review. Appellant asserts: (1) the military judges at the *DuBay* hearings erred in finding that trial defense counsel acted in accordance with their legal and ethical obligations and (2) appellant received ineffective assistance of counsel when his two trial defense counsel provided no assistance during his testimony. After reviewing the entire record, to include both *DuBay* hearings, both military judges' findings, appellate counsels' supplemental briefs, and oral arguments, we find appellant's trial defense counsel provided appellant with effective assistance at trial.

## BACKGROUND

Captain (CPT) B and CPT M represented appellant at his court-martial.[1] Captain B had served on active duty for approximately four years prior to appellant's court-martial and as a defense counsel on fifteen to twenty courts-martial before appellant's trial. She did not practice law prior to entering active military service. Captain M, a reservist on active duty, began practicing law in 1982 in Utah and had previously tried thirty-five jury trials in federal court and two capital cases in state court as a defense attorney.

During trial on the merits, the defense presented testimony of two witnesses, stipulated to the testimony of four other witnesses, and offered eight exhibits into evidence. Before the close of the defense case, the military judge granted a defense request for "a short recess." During the recess, appellant consulted with his counsel; appellant's counsel then engaged in *ex parte* communications with the military judge without appellant present. Defense counsel told the military judge they could no longer ethically represent appellant and requested permission to withdraw from the case. The military judge assumed counsel were talking about perjured testimony; however, she did not ask counsel for specifics and counsel did not proffer any specifics regarding appellant's prospective testimony.[2]

The proceedings resumed in an Article 39(a) session without the members present. The military judge informed appellant his counsel wished to withdraw because his counsel expected him to testify inconsistently with prior statements he made to them. Responding to questions from the military judge, both counsel stated they could not ethically call appellant to the stand to testify. The military judge

---

[1] Although CPT B is no longer a member of the armed forces, all references are to her military rank at the time of the court-martial. Additionally, CPT M has been promoted to major. We will also refer to him by his rank at the time of appellant's court-martial.

[2] The military judge later testified about these events at the first *DuBay* hearing.

explained the narrative procedure through which appellant would testify and informed appellant he would testify without the benefit of counsel. She further explained that trial counsel, members, and the military judge could examine appellant, but that his trial defense counsel could not argue to the members anything appellant said during his narrative. Appellant said he understood the military judge's explanation and accepted her offer to discuss the matter further with his counsel. After another recess, the military judge confirmed appellant wanted to testify, called the members to the courtroom, and called appellant to the stand. Appellant testified in narrative form for approximately two hours without the assistance of counsel. He responded to the prosecution's detailed cross-examination and answered a series of questions from the members asked by the military judge. The defense rested its case at the conclusion of his testimony. The government offered brief testimony in rebuttal, calling appellant's first sergeant who testified that, in his opinion, appellant was untruthful.

*First DuBay Hearing*

At the first *DuBay* hearing, both CPT B and CPT M refused to specify why they concluded appellant would testify falsely. Captain B said she still had an attorney-client relationship with appellant, while CPT M said he "believed he still had an obligation to [appellant]." Both counsel said the Rules of Professional Conduct of their respective bars prohibited them from disclosing any confidential communications,[3] even though CPT B acknowledged appellant had executed a limited waiver, consenting to a "limited disclosure of confidential communication . . . reasonably necessary for CPT [B] to respond to allegations concerning her representation of [appellant]." Although appellant's *DuBay* defense counsel repeatedly asked the military judge to direct CPT B and CPT M to provide specific responses, the military judge failed to order specific responses, stating he was unsure whether he had the authority to do so.

The military judge found "the information that led counsel to conclude that there was an ethical problem is mostly conceptual, although there are some specific

---

[3] At the time of trial, CPT B was a member of the Texas Bar, while CPT M was a member of the Utah and District of Columbia (D.C.) Bars. In accordance with the applicable Rules of Professional Conduct, counsel were required to try to persuade an accused to refrain from perjurious testimony. If counsel could not dissuade an accused, withdrawal may have been an acceptable resolution. *See* Army Reg. 27-26, Legal Services: Rules of Professional Conduct for Lawyers [hereinafter AR 27-26], 3.3 cmt (1 May 1992); Utah Code Jud. Admin. Rule 3.3 cmt; D.C. Bar Appx. A, Rule 3.3 cmt; Tex. R. Prof. Conduct 3.03 cmt.

facts that support counsel's decision." He explained "conceptual" to mean: "I do not have specific instances or matters other than [appellant's] inconsistencies in describing the conviction." Although counsel failed to provide any specific details, the military judge found "counsel determined that they could not ethically call [appellant] to the stand."

*Second DuBay Hearing*

At the second *DuBay* hearing, CPT B and CPT M testified with greater specificity. The *DuBay* judge made extensive findings of fact, which we summarize as follows:

(1) Both of appellant's trial defense counsel thoroughly investigated appellant's case and were well prepared to represent him at trial;

(2) While trial defense counsel requested appellant provide details and specific information to prepare his defense, he did not do so until the day of trial, and then provided a binder of documents and proposed areas of inquiry that were either cumulative or tangential;

(3) Trial defense counsel believed appellant would perjure himself by claiming he left his place of duty to get a haircut; claiming his unit used the particular type of color printer cartridges that appellant allegedly stole; lying about his 1985 federal convictions for making false, fictitious, and fraudulent statements, and possessing a falsified document to aid someone to obtain money from the federal government;

(4) Trial defense counsel based their conclusion regarding the haircut on appellant's admission to them on one occasion that he failed to get a haircut; his subsequent retraction of that admission; and his failure to provide any corroborating information for his retraction;

(5) Trial defense counsel based their conclusion that appellant was untruthful regarding the stolen printer cartridges on: supply room logs revealing the unit never stocked the printer cartridges in question; information from the supply room noncommissioned officers (NCOs) that none of the unit's computers used those printer cartridges; CPT B's observation that appellant had hundreds of color copy resumes and a personal computer printer that used that type of cartridge in his barracks room; the discovery of a bag full of printer cartridges for appellant's personal printer that had been paid for with a government credit card; and the bag

containing the cartridges was found in a military vehicle operated by appellant. After investigating, CPT M independently reached the same conclusion as CPT B;[4]

(6) Trial defense counsel based their conclusion on appellant's veracity regarding his prior federal conviction on his varied accounts of the facts underlying his conviction which conflicted with CPT B's electronic research regarding the conviction and documentation the prosecution provided the defense team;

(7) Captain B's standard for concluding appellant would testify falsely was whether she *knew* her client would lie, which she saw as a high standard of proof. She did not believe her client had to admit guilt to an underlying offense before she refused to present his testimony;

(8) Captain M's standard was likewise very high, akin to beyond a reasonable doubt, and he also did not believe the analysis depended on whether his client admitted guilt;

(9) Trial defense counsel and appellant originally agreed, as a tactical decision, appellant would not testify because of appellant's "very desultory thought process," poor character for truthfulness which CPT B uncovered in her investigation, and prior federal conviction. At the last moment, appellant changed his mind and decided to testify. Given appellant's unpredictable nature, it was not possible for counsel to have appellant tailor his testimony;

(10) Both counsel were confident they confronted appellant about his falsehoods prior to trial; and

(11) Consistent with their "fiduciary obligations" [sic], both counsel refrained from divulging specifics to the military judge at trial. They exercised the best option they saw available to protect themselves and appellant.

*Summary*

We adopt the second *DuBay* judge's findings of fact. In addition, based on the entire record before us, we conclude: prior to trial, CPT B and CPT M together confronted appellant about his perceived falsehoods and could not obtain explanations from him; during the court-martial, appellant notified his defense counsel of his intent to testify; CPT B specifically informed appellant during recess

---

[4] The *DuBay* judge found that CPT B and CPT M accounted for the supply NCOs' own credibility issues, and relied heavily on the documented fact that appellant's unit supply room never stocked those particular cartridges.

she could not call him to testify because she believed he would lie; and both counsel possessed an objective, firm, factual basis to conclude appellant would perjure himself.

We also find appellant was untruthful regarding the haircut offenses at trial when he testified he got a haircut every time he was ordered to get one. We further find appellant was untruthful when he testified he regularly placed the printer cartridges on the shelves in the supply room and they regularly disappeared over the course of the following month.

## DISCUSSION

A determination regarding the effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984) (establishing a two-prong test for determining ineffective assistance of counsel); *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997); *United States v. Dobrava*, 64 M.J. 503 (Army Ct. Crim. App. 2006). We review findings of fact under a clearly erroneous standard, but the question of ineffective assistance of counsel flowing from those facts is a question of law we review de novo. *United States v. McClain*, 50 M.J. 483, 487 (C.A.A.F. 1999).

> Under the first prong of *Strickland*, which examines the issue of deficiency in performance, we ask: (A) Are appellant's allegations true? (B) If so, is there a reasonable explanation for counsel's actions? (C) If there is not a reasonable explanation, did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers?

*United States v. Dobson*, 63 M.J. 1, 10 (C.A.A.F. 2006) (citing *United States v. Grigoruk*, 56 M.J. 304, 307 (C.A.A.F. 2002), and *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

"Even if counsel's performance was deficient, the defense must ordinarily surmount the second prong of *Strickland*, which measures prejudice. The defense bears the burden of demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" 63 M.J. at 10 (quoting *Strickland*, 466 U.S. at 694). In most cases, the prejudice prong is the most critical, for "'if we conclude that any error would not have been prejudicial under the second prong of *Strickland*, we need not ascertain the validity of the allegations or grade the quality of counsel's performance under the first prong.'" *Id.* (quoting *United States v. Saintaude*, 61 M.J. 175, 179-80 (C.A.A.F. 2005)).

During oral argument before this court after the second *DuBay* hearing, appellate defense counsel urged us to follow United States Supreme Court *dicta* in *United States v. Cronic*, 466 U.S. 648 (1984). In a *Cronic* footnote, the Supreme Court cited several cases where it "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659–60 n.25.[5] In each of those cases, however, either state criminal procedure prevented counsel from assisting the accused, or counsel were not present for a critical stage of the proceeding through no fault of the accused. Where an accused is, in part, responsible for the unavailability of his counsel, as in an instance of prospective perjury, we will apply *Strickland* and test for prejudice.

## I. *The Legal Standard*

An attorney must have a firm factual basis to believe the client intends to commit perjury before acting in a manner limiting representation of a client and must first attempt to dissuade the client from committing perjury. *See Baker*, 58 M.J. at 387–88.[6] Should counsel's efforts to dissuade the client fail, counsel must take appropriate, remedial measures. First, the attorney should try to structure the client's testimony to avoid areas where the client will commit perjury. Should this prove impossible, the next step is to provide the court nonspecific notice the client will testify in the free narrative form. *See id.* at 386. Finally, only in situations where the attorney-client relationship is irreparably damaged should counsel seek to withdraw. *See id.* at 387.

---

[5] *See Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612–13 (1972); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *Ferguson v. Georgia*, 365 U.S. 570 (1961); *Williams v. Kaiser*, 323 U.S. 471, 475–76 (1945).

[6] The CAAF also provided guidance for counsel confronting a problem with potential client perjury. The court suggested counsel first investigate the validity of the evidence to be offered at trial; if such an investigation provides a firm factual basis to anticipate perjury, counsel should discuss the issue with the client and review the facts, the basis for the attorney's concern, and potential consequences for the client, such as the obligation to tell the truth, possible criminal sanctions, trial tactics, and the effect of narrative testimony; should the client persist in testifying, the attorney should request an *ex parte* proceeding on the record with the accused in attendance. *Baker*, 58 M.J. at 387. The CAAF also noted it was not establishing mandatory practices. *Id*. at 388.

Not only have we found trial defense counsel possessed a firm factual basis to conclude appellant would commit perjury if he testified, we also hold counsel did not deprive appellant of the effective assistance of counsel during his court-martial. Prior to analyzing appellant's assignments of error, however, we need to address several procedural aspects of the trial proceedings.

## II. *Trial Practice*

Counsel who are convinced a client intends to commit perjury are caught between two conflicting obligations: confidentiality of information and candor toward the tribunal. *See* AR 27-26, Rule 1.6 (confidentiality of information); Rule 3.3 (candor toward the tribunal). A lawyer's duty to maintain a client's confidences and secrets is a cornerstone of building trust and communication. *See United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 122 (3d Cir. 1977) (keeping inviolate client's ability to communicate confidentially with counsel essential to adversary system). If an accused cannot trust his counsel to keep information confidential, the accused will not disclose confidences, limiting counsel's ability to render effective assistance. Military Rule of Evidence 502(a); *see generally United States v. Marrelli*, 4 U.S.C.M.A. 276, 281–82, 15 C.M.R. 276, 281–82 (C.M.A. 1954).

As officers of the court, counsel also have a duty not to offer false testimony. *Baker*, 58 M.J. at 385 (citing AR 27-26, Rule 3.3, Rule 3.4(a) (obligation of fairness to opposing party and counsel)). If an attorney says nothing to the court and offers perjured testimony in the usual manner, counsel will have participated in a fraud upon the court. *See Nix v. Whiteside*, 475 U.S. 157, 169, 173 (1986) (lawyer complicit in client perjury faces prosecution or disciplinary action). In the course of attempting to prevent perjury, an attorney might disclose a client's confidential communications to the court either directly or indirectly, depending on the tactical approach counsel takes to the problem. *See United States v. Long*, 857 F.2d 436, 447 (8th Cir. 1988) (moving to withdraw or having client testify in narrative form discloses suspicion of perjury). Counsel should refrain from directly disclosing specific confidences if at all possible. *See Baker*, 58 M.J. at 386 (counsel made nonspecific disclosure to court that client will testify in free narrative form); *Johnson*, 555 F.2d at 122 (counsel should not disclose private conjectures about client to the court); *cf. United States v. Midgett*, 342 F.3d 321, 326 (4th Cir. 2003) (not lawyer's place to decide client was lying and to disclose that belief to the court based on suspicion of perjury).

An example of an indirect disclosure occurred in the present case. Counsel's motion to withdraw led the military judge to suspect potential perjury, which constitutes at least an implied revelation of client confidences. Notification of the accused's intent to testify in the narrative form would also have led the military judge to suspect potential perjury.

9

At trial, the military judge instructed CPT B and CPT M to prepare memoranda for record outlining circumstances before and after appellant's testimony to assist evaluating potential claims regarding ineffective assistance of counsel. At the first *DuBay* hearing, both counsel testified they prepared a memorandum in accordance with the judge's instructions. Due to the passage of time and subsequent events, neither counsel could produce their respective memoranda. Although we commend the military judge's foresight, in the future military judges should obtain, seal, and attach such memoranda as appellate exhibits. *Baker*, 58 M.J. at 388. Where a military judge is not the trier of fact, an *ex parte* proceeding to ensure counsel has a firm factual basis for believing the client will commit perjury may be appropriate. *United States v. Roberts*, 20 M.J. 689, 691–92 (A.C.M.R. 1985); *see United States v. Elzy*, 25 M.J. 416 (C.M.A. 1988); *Lowery v Cardwell*, 575 F.2d 727 (9th Cir. 1978).[7] Only with the accused's express and informed consent should such a proceeding address areas within the scope of the attorney-client privilege and work product doctrine.

### III. *Sixth Amendment Right to Effective Assistance of Counsel*

The Sixth Amendment guarantees a criminal appellant the right to the assistance of counsel at trial. U.S. Const. amend. VI. To satisfy the guarantee of the Sixth Amendment, counsel must provide effective assistance. *Strickland*, 466 U.S. at 686. An accused also has a Constitutional right to testify. *Harris v. New York*, 401 U.S. 222, 225 (1971). Notwithstanding its Constitutional stature, however, an accused's right to testify has its limits. In *Whiteside*, 475 U.S. at 173, the Supreme Court made clear an appellant has no Sixth Amendment right to a counsel willing to participate in presenting perjured testimony. Accordingly, the right to testify includes neither the right to commit perjury nor the right to the assistance of counsel in doing so. *Harris*, 401 U.S. at 225; *Whiteside*, 475 U.S. at 173.

### IV. *Suspicions of Perjury*

Courts employ a variety of standards to determine whether an attorney justifiably believed a client intended to commit perjury. *See Long*, 857 F.2d at 446

---

[7] In civilian proceedings, the recommended practice is to have an *ex parte* proceeding before a judge who is not presiding over the trial. *See, e.g.*, Carol T. Rieger, Client Perjury: A Proposed Resolution of the Constitutional and Ethical Issues, 70 MINN. L. REV. 121 (1985); Brian Slipakoff & Roshini Thayaparan, Current Developments 2001: The Criminal Defense Attorney Facing Prospective Client Perjury, 15 GEO. J. LEGAL ETHICS 935, 942–43 (2000). At courts-martial, another military judge could be detailed for such hearings.

("firm factual basis" standard); *Johnson*, 555 F.2d at 122 (stating same); *Commonwealth v. Mitchell*, 781 N.E.2d 1237 (Mass.) (stating same), *cert. denied*, 539 U.S. 507 (2003); *In re Grievance Committee*, 847 F.2d 57, 63 (2d Cir. 1988) ("actual knowledge" standard); *Iowa v. Hischke*, 639 N.W.2d 6 (Iowa 2002) ("convinced with good cause" standard); *Wisconsin v. McDowell*, 681 N.W.2d 5 (Wisc. 2004) (requiring express admission that accused intends to commit perjury); *Shockley v. Delaware*, 565 A.2d 1373 (Del. 1989) (beyond a reasonable doubt standard); *Illinois v. Calhoun*, 815 N.E.2d 492 (Ill. App. 2004) ("good faith determination" standard). In previously reviewing this case, the CAAF announced it "shall not require a higher standard than [the] firm factual basis" standard discussed in *Johnson*. *Baker*, 58 M.J. at 386.

> When the question of perjured testimony by a defendant arises, we require that the lawyer act in good faith and have a firm basis in objective fact. Conjecture or speculation that the defendant intends to testify falsely are not enough. Inconsistencies in the evidence or in the defendant's version of events are also not enough to trigger the lawyer's obligation not to elicit false testimony, even though the inconsistencies, considered in light of the Commonwealth's proof, raise concerns in counsel's mind that the defendant is equivocating and is not an honest person. Similarly, the existence of strong physical and forensic evidence implicating the defendant would not be sufficient. Counsel can rely on facts made known to him, and is under no duty to conduct an independent investigation.

*Calhoun*, 815 N.E.2d at 503 (quoting *Mitchell*, 781 N.E.2d at 1250–51) (calling for Illinois Supreme Court to adopt firm factual basis test).

### V. *Counsel's Firm Factual Basis*

In appellant's case, CPT B and CPT M obtained proof of appellant's falsehoods through their investigations which were further complicated by appellant's constantly changing version of the facts. The varying accounts were more than merely inconsistent; they were directly contradictory. As defense counsel observed, the contradictions rendered appellant's story "physically impossible." Further, appellant confessed to an instance of failing to obtain a haircut and, despite his subsequent recantation, never provided any evidence to support his retraction.

While inconsistencies alone are insufficient to justify a motion to withdraw, appellant's inconsistencies included an admission of guilt. Captain B and CPT M

were entitled to rely on appellant's admission that he failed to obtain a haircut. *See Mitchell*, 781 N.E.2d at 1247 (investigation unnecessary where accused admits guilt). Appellant's failure to explain his confession and its subsequent retraction further solidified his counsel's basis to conclude he would lie.

We reach the same conclusion as to appellant's explanation of the larceny offenses. Unlike the haircut question, appellant did not admit to stealing the cartridges. His lie, however, involves the reason he obtained the cartridges from the Self-Service Supply Center. Appellant's claim he needed to restock the unit's supply room since the cartridges were "flying off the shelves" is patently untrue. First, the unit records establish it never stocked that brand of printer cartridges, and the supply sergeants told the defense team none of the unit's computers used those cartridges. Second, defense counsel knew appellant used a large number of cartridges of the same type as the stolen ones.

Appellant's case closely resembles *Commonwealth v. Mitchell*. Like Mitchell, appellant confessed to one of his offenses to his counsel, then denied it. The *Mitchell* court determined "[t]he defendant's admission was different in kind from inconsistencies in details." 781 N.E.2d at 1247. Such is the case here; appellant's admission that he did not get a haircut when ordered to do so is not the same as giving varying accounts of the same denial of wrongdoing.

## VI. *Counsel's Actions Based on the Firm Factual Basis*

### A. *Attempt to Dissuade*

During the recess, when appellant told his counsel he changed his mind and wanted to testify, CPT B attempted to dissuade appellant from testifying. CPT B advised him he was not permitted to lie on the stand and explained the tactical reasons why he should not testify, to include his prior conviction and the evidence of his poor character for truthfulness. She warned appellant of the repercussions should he insist on testifying falsely, specifically counsel's inability to assist him in presenting perjured testimony and losing the assistance of counsel if he testified falsely. Counsel did not clearly explain to appellant which portions of his prospective testimony they believed to be perjurious. Neither CPT B nor CPT M testified they advised appellant of the potential criminal sanctions he might face if he committed perjury. While this failure to advise appellant more fully of the ramifications of presenting perjured testimony might under other circumstances constitute error, under the specific circumstances of this case we find defense counsel adequately discharged their duties under *Strickland*.

Both defense counsel repeatedly confronted appellant with their concerns about his proposed testimony prior to his decision to testify. In the second *DuBay*

hearing, CPT B told the military judge that appellant would shrug his shoulders, "would shut down," or would change the subject when counsel confronted him before trial about his lies.[8] Captain B spent several months with appellant preparing his case and clearly relayed her concerns to him; CPT M had a less-involved history with appellant, but was no less clear in expressing his concerns. Counsel tailored the confrontational aspects of their conversations with appellant to convey their message without causing him to "shut down" completely. Appellant's initial agreement with counsel's recommendation not to testify understandably forestalled further efforts to extract a true account of events from him. When appellant changed his mind mid-trial, counsel had less of an opportunity to address his new decision. Counsel's initial confrontations with appellant, however, suffice to satisfy their duty to address their concerns about his testimony with him.

The second *DuBay* judge, having had the benefit of observing appellant's testimony and demeanor under both direct and cross examinations, concluded:

> appellant's personality and nature, and his inability to follow a narrow, focused train of thought[,] made it virtually impossible for [CPT M] and CPT [B] to limit direct examination . . . to avoid potential areas of false testimony, especially given the last minute reversal of the mutual decision that . . . appellant would not testify.

Based upon our review of the record, we agree. Appellant was unmanageable. Had defense counsel attempted to present his testimony in a controlled manner designed to avoid perjury, they most likely would have failed.

We also note that in the course of receiving advice on the initial offer of nonjudicial punishment, appellant spoke with every defense counsel in the local Trial Defense Service office, meaning he spoke with at least two other attorneys before returning to CPT B. After initially demanding his right to trial by court-martial when offered nonjudicial punishment for the haircut offenses, appellant twice agreed with defense counsel to accept nonjudicial punishment proceedings in lieu of the court-martial. Each time defense counsel persuaded appellant's command

---

[8] Notably, appellant's reticence in the face of a challenge to his veracity prompted CPT M to have appellant psychiatrically evaluated. According to the testimony at the *DuBay* proceedings, the evaluation did not indicate appellant suffered from any mental disease or defect impairing his ability to communicate with counsel or to understand their communications. While counsel's descriptions of appellant's actions may indicate appellant did not communicate with them, any inability to do so was not due to appellant's lacking the capacity to communicate.

to re-offer nonjudicial punishment proceedings, appellant rejected those proceedings.

Both defense counsel had extensive experience and characterized appellant as unique based on his unpredictable and difficult nature.  In response to a question about her ability to work with appellant to guide his testimony away from areas where he would lie, CPT B testified "[t]here are some witnesses that I think I probably could have worked with . . . to create testimony that stayed away from those areas; I don't believe that was possible with [appellant].  He was completely uncontrollable."  She later testified "I had never run into this situation before.  I had, at this point, tried dozens of cases, both as a prosecutor and defense counsel.  I had never been in a position where I felt I could not call anyone to the stand, with the exception of [appellant]."  Captain M referred to appellant as "[t]he most difficult" client, and stated he "had never been in the position where [he] requested a withdrawal from the court."[9]

Regarding counsel's duty to advise appellant of potential criminal sanctions, it is important to note appellant was familiar with the legal consequences for making false statements.  He defended himself in his prior federal prosecution, presented his own appeal after his conviction, and sought a writ of certiorari from the United States Supreme Court after the appellate court affirmed his case.  Appellant, therefore, was on actual notice that making false statements in an official federal government matter could result in criminal liability.  Failure to reiterate that point to appellant when he decided to disregard counsel's advice in the middle of his court-martial and testify does not constitute a professional deficiency on these facts.

Counsel also did not advise appellant of the risks of testifying in the free narrative form.  While counsel's advice to appellant could have been more complete under the *Baker* standard, we find they adequately discharged their duties.  The military judge explained the free narrative form to appellant before obtaining his decision to testify.  While neither counsel nor the military judge specifically advised appellant of the tactical problems inherent in free narrative form testimony, we find the absence of such advice in this case does not render counsel professionally deficient.  In any event, counsel advised appellant he would have to testify without their assistance and he chose to testify.

Indeed, in the beginning of his testimony, appellant gave a facially plausible reason for his testifying in the free narrative form:  "I chose to give a category [sic] explanation to you gentleman [sic] for each individual charge

---

[9] The latter quotation from CPT M's testimony comes from the first *DuBay* hearing, while the former comes from the second *DuBay* hearing.

because you're here to judge me as a soldier and an individual. So you get to hear from me." Even if we were to characterize counsel's performance as deficient, we cannot say there is a reasonable probability of a different result based on their advice to appellant. *See Strickland*, 466 U.S. at 694; *Saintaude*, 61 M.J. at 175–76. In fact, appellant contested all twelve specifications against him and the panel convicted him of only four. *Baker*, 58 M.J. at 390. Significantly, the panel found him not guilty of all specifications for the offenses of larceny[10] and dereliction of duty, not guilty of all specifications of one of the willful disobedience charges, and not guilty of three of the four specifications of absence from duty. *Id*. Ironically, therefore, appellant's perjured testimony resulted in no prejudice to him—it actually inured to his benefit.

Appellant also wanted to testify in part so he could explain his belief that his unit discriminated against activated Reserve Component Soldiers, despite counsel's warnings of the problems he would create by doing so. Even after counsels' efforts and attempt to withdraw, appellant did not heed this advice. It is clear appellant intended to testify and perjure himself no matter what his counsel said. While a difficult and unpredictable client does not forfeit his right to effective assistance of counsel, we are satisfied there is nothing CPT B or CPT M could have done to prevent appellant from committing perjury. Under these facts, counsel acted properly in accordance with their duty of candor to the tribunal.

### B. *The Motion to Withdraw*

The next question is whether counsel acted appropriately in moving to withdraw. Withdrawal is a more drastic remedy than the use of the free narrative form, and has the potential effect of depriving the client of the assistance of counsel for the remainder of the trial. *Cf. Baker*, 58 M.J. at 386 (noting some authorities see withdrawal as too disruptive "and simply foists the issue on the next attorney"). Our superior court would limit motions to withdraw to situations where the attorney-client relationship has deteriorated to the point where effective representation is no longer possible. *Id*. at 387. Nothing indicates such was the case here. Counsels' decision to withdraw was premature.

Nevertheless, counsel moved to withdraw in a manner that preserved appellant's confidences as much as possible. The military judge denied the motion

---

[10] Although the panel could not conclude beyond a reasonable doubt that appellant committed the larcenies, their findings of not guilty do not cause us to question CPT B and CPT M's decision, or our own conclusion that counsel had a firm factual basis to believe appellant would perjure himself when testifying about these charges.

to withdraw, leaving appellant in the same position he would have occupied had counsel initially chosen the free narrative form. We do not fault counsel for their no-notice decision in the middle of this hotly contested trial. *See United States v. Young*, 50 M.J. 717, 725 (Army Ct. Crim. App. 1999) (question is not whether a different attorney would do a better job, but whether the attorney advising accused was professionally deficient), *aff'd*, 58 M.J. 15 (C.A.A.F. 2002) (summary disposition). Counsels' performance in this case did not "fall measurably below the performance normally expected of fallible lawyers." *Dobson*, 63 M.J. at 10 (quoting *Grigoruk*, 56 M.J. at 307; *Polk*, 32 M.J. at 153).

While counsel should not have sought to withdraw and only should have notified the military judge their client would testify in the free narrative form, the end result was the same: appellant testified, and his counsel did not aid in the presentation of perjured testimony. There is no reasonable probability of a different result if counsel had made the ideal motion. In the future, however, counsel should not seek to withdraw "unless the circumstances as a whole have produced such an irreconcilable conflict between counsel and the accused that effective representation no longer is possible." *Baker*, 58 M.J. at 387.

## CONCLUSION

Prior to trial, appellant told his defense counsel he failed to comply with an order to get a haircut. The unit's supply records and MSG Hyde's information established the printer cartridges in question never entered the supply room. Appellant clearly informed his counsel he intended to testify to the contrary on these matters and changed his mind in the middle of the trial to reverse his decision not to testify and drastically altered the defense trial strategy. Under these circumstances, his counsel could not participate in appellant's testimony. Defense counsel's decision did not deprive appellant of effective assistance of counsel, and his claims to that effect are without merit.

We have reviewed the matters personally raised by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

## DECISION

The findings of guilty and the sentence are affirmed.

Judge SULLIVAN and Judge HOLDEN concur.

BAKER – ARMY 9800743



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court